## Case No. 7,707.

KENNEDY et al. v. ST. PAUL & P. R. CO. et al.

[5 Dill. 519.] [1]

Circuit Court, D. Minnesota. May 31, 1878

RAILWAY MORTGAGE—FORECLOSURE — AUTHORITY TO RECEIVER TO BUILD UNFINISHED PARTS OF THE ROAD, TO SAVE FORFEITURE OF FRANCHISES AND LAND GRANT.

1. A court of chancery, in the progress of a foreclosure suit against a railroad company, ought not to enter upon the work of building or completing a railroad unless there is an irresistible necessity to do so, in order to prevent a great and certain sacrifice of the rights and securities of the parties in interest.

2. Under the extraordinary circumstances of this cause, the trustees and four-fifths of the bondholders consenting, and none opposing, the court, in order to prevent the forfeiture of the franchises of the company and the loss of a valuable land grant, authorized the receiver to construct the unfinished portions or links of the road, out of moneys to be furnished by bondholders; but the court refused to issue debentures as a means of credit in advance of actual construction, or to permit the receiver to incur, for construction purposes, any indebtedness beyond the amount of money furnished by the bondholders. When the road should be fully completed, the order provided for the payment of the actual cost thereof by debentures, which should be a lien upon the property to the extent indicated.

3. Under this order, one hundred and twenty-five miles of railway were built, and the lines

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

of the company's road completed, and the forfeiture prevented, and debentures were then issued for the cost of construction, and were afterwards paid out of the proceeds of the sale of the property under the decree. (See note.)

4. Right of non-assenting bondholders to impeach decree and sale, and proper mode of procedure. (See note.)

The cause is now before the court on the application of the receiver for authority to construct the unfinished portions of the road, and to issue debentures to raise money for that purpose. Shortly, the material facts are these:

A suit was originally instituted by and in behalf of mortgage bondholders against the railroad company and others, including the trustees in the mortgage. See Kennedy v. St. Paul & P. R. Co. [Case No. 7,706]. Afterwards, in virtue of proceedings under the power in that behalf contained in the mortgage, the original trustees were removed, and Wetmore and others were duly appointed in their places. The new trustees thus appointed, having duly accepted the trusts, brought a bill to foreclose the mortgage or deed of trust for $15,000,000, dated April 1st, 1871, mentioned in the former report [Id.] The St. Paul and Pacific Railroad Company and the First Division Company, and others, were made defendants. Under the former order made in the case, supra, the receiver, Mr. Farley, only expended in the work of construction and repair about $100,000. Meanwhile, the receiver has preserved the property and operated the road without loss, and with some small profit. The completed parts of the road were links or fragments, and of comparatively little value unless the whole line should be finished. The amount of road completed and not completed appear in the Kennedy Case, above cited. The disputes incident to the bankruptcy of the company and the failure of its enterprise have prevented the company, the bondholders, or the receiver from completing the construction of the extension lines, and the litigation cannot be brought to a speedy close. The legislature of Minnesota, on March 9th, 1878, passed an act providing for the forfeiture of the company's franchises and lands, as respects the unfinished lines of its road, unless a specified number of miles should be built by August 1st, 1878, another part by December 1st, 1878, and to St. Vincent by January 1st, 1880, etc. Sp. Laws 1878, p. 344. The act provided that "in case the said St. Paul and Pacific Railroad Company, its successors or assigns, should fail to complete any of said portions of said line of railroad within the times therefor limited in this section, in that case the portions of said line of railroad then remaining uncompleted, together with the land grant, rights, franchises, immunities, and property appertaining thereto, shall at once be and become absolutely forfeited to the state of Minnesota, without any act or ceremony whatsoever." The foreclosure cause is not ready for final hearing,

and no decree can be rendered in time to enable the purchasers thereunder to complete the road and save the forfeiture. Under these circumstances, the receiver, at the instance of Mr. George Stephen and other large bondholders, and with the concurrence of the new trustees, presented a petition to the circuit judge for authority to construct the uncompleted lines of road and issue debentures for the cost thereof.

On the 18th of April, 1878, the following order was made: "John S. Kennedy et al. v. The St. Paul and Pacific Railroad Co. et al. The above entitled cause having come on to be heard upon the order made herein April 8th, 1878, on the petition of J. P. Farley, receiver, that the defendants and all lienholders show cause why the said receiver should not be authorized to issue the debentures of said company to construct the uncompleted portions of the St. Vincent extension of the St. Paul and Pacific Railroad, and it appearing that due service of said order was made as required therein, and after hearing I. V. D. Heard, solicitor for the said receiver, in support of said application, and George L. Otis, Esq., solicitor for the plaintiffs herein, and for Jacob S. Wetmore, Thomas W. Pearsall, and Thomas Denny, trustees under the $15,000,000 mortgage described in the complaint, in concurrence with and in support of said application, and noting the protest of the Northern Pacific Railroad Company, and of the First Division of the St. Paul and Pacific Company, filed in the cause, it is hereby ordered, for the purpose of fully advising the court in the premises, that Mr. John B. Henderson and Mr. Thomas C. Reynolds, of the state of Missouri, be appointed a commission of examination and inquiry to report all of the facts necessary to enable the court to judge of said application, and, inter alia, to ascertain and report as to the following matters: 1. The cost of completing and equipping the sections of road between Melrose and Fergus Falls, and between Fergus Falls and Barnesville, and between Snake river and St. Vincent. 2. The names of the owners of the bonds under said mortgage, and the number and amount held by each owner or representative of each owner. 3. How many of such bond owners propose to take debentures, and in what sums, and to procure their formal agreement as to the amount of money they will advance on the security of such debentures. Also, the formal assent of the said new trustees to the issue of debentures for the purposes desired. 4. What guaranties should be required by the court, that the necessary money will be furnished and the road completed to St. Vincent, and at least to Fergus Falls by January 1st, 1879. 5. Whether, for the security and protection of the parties in interest, it is sufficient to provide that, if enough money is not furnished to complete said sections of road entire, that then the debentures negotiated shall only be a lien on an equal foot-

ing with the mortgage bonds, except on the lands earned with the moneys so furnished. 6. In case sufficient moneys are furnished, and the said sections of road are fully completed, then what priority shall be given to the debenture holders—shall it extend to the entire road and lands, or only to uncompleted road and lands, or to whole road without lands, and if to lands, whether it should be limited to the lands hereafter earned or extended to lands heretofore earned as well. 7. What should be the form and terms of payment of debentures and of the lien security therefor. 8. What provisions should be made to secure the just rights of bondholders who do not join in the scheme, and herein, as to an order allowing any bondholder, before a sale, to pay his proportion, with interest, and stand on an equal footing with the other debenture holders. 9. What provision ought to be made about sale of lands on hand, and as to their appraisement and mode of sale, and whether proceeds shall be pledged for payment of debentures, or how otherwise disposed of. What is the value of the lands already earned, and what the value of the lands to be earned. 10. What provision should be made as to the issue and registry of debentures, and whether they should be issued only as sections of road are completed, upon the order of the court, and what provisions to securing the economical expenditure of money in construction. 11. The commissioners, or one of them, will hear any of the plaintiffs or any of the defendants, touching the order applied for, on seasonable application. 12. After examination and inquiry, and full consideration of any matters submitted to them, said commissioners will make a report and a recommendation either for or against the proposed order, and if in favor, then to accompany the report with the draft of an order embodying their recommendations; and they will report with all convenient speed. Dated at Jefferson City, Missouri, this 18th day of April, 1878. John F. Dillon, Circuit Judge."

The commissioners, after a full examination, made a report as to the situation of the property, the cost of construction, the value of the lands which had been earned and of those that would be lost if the road was not completed as required by the act of the Minnesota legislature, and as to the wishes of the bondholders, the ability of Mr. Stephen and others to furnish the necessary money to complete the road, and the character of the lien which should be given for the security of the debentures, and recommended the granting of the receiver's application. The following opinion was given May 31st, 1878, on the application of the receiver to be authorized to construct the road and issue debentures.

George L. Otis, for trustees.

I. V. D. Heard, for receiver.

H. R. Bigelow, for First Division of St. Paul and Pacific Railroad Company.

John B. Sanborn and George Gray, for St. Paul and Pacific Railroad Company.

George B. Young, for Mr. Stephen and other bondholders.

DILLON, Circuit Judge. An application is made by the receiver for authority to complete the unfinished portions of the said railroad, and to issue debentures to raise the means of construction. The situation of the case is peculiar, and even extraordinary. The cause in which the receiver was appointed, as well as the foreclosure cause by the new trustees, is still pending, and it is certain that a final decree cannot be rendered in time to save the forfeitures provided for in the act of the legislature of Minnesota of March 9th, 1878. Unless the road is constructed as required by that act, the rights of the railroad company, as respects the unfinished road, and as respects the lands appertaining thereto, will be forfeited, and the principal security of the bondholders secured by the mortgage will be wholly lost. The fragments of road already completed would, in that event, be comparatively of little value. If the line of the railway is completed, it is clear that the effect will be to make the parts already completed more valuable. The mortgage bonds outstanding greatly exceed the value of the property. Four-fifths of all the bondholders apply for the order. Not a single bondholder has appeared to oppose it. The trustees in the mortgage, representing all the bondholders, ask that the order be made. A commission appointed by the court has examined the railroad and the lands, and ascertained the wishes of the bondholders, and recommend that the desired authority be given by the court. The only parties not consenting are the holders of stock in the St. Paul and Pacific Company and the First Division Company. But the interests of the stockholders and of the bondholders of the St. Paul and Pacific Company are, in the actual situation of the case, antagonistic, and the stock is of no value. Even the mortgage bonds are worth, in the market, but a few cents on the dollar. The First Division Company, itself hopelessly insolvent, and whose road is in the hands of trustees under mortgages, has no substantial interest of value in the matter. The opposition to the order asked for is not of a nature to defeat the application if the order is one which ought otherwise to be made.

I assent, in the fullest manner, to the proposition that a court of equity ought not to enter upon the work of either operating or building a railway, if this can possibly be avoided without the certain and great sacrifice of the rights and securities of the parties in interest. The original order in this case was made upon this principle and upon the exceptional case which the record presented. Kennedy v. St. Paul & P. R. Co. [Case No. 7,706]. It is not to be inferred from the report of that case that authority even to

complete the building of an unfinished line of railway, and to issue debentures for that purpose, is to be conferred without an overwhelming and irresistible necessity. When such authority is conferred, it ought to be guarded with the utmost care.

I have given to the present application great and even anxious consideration. It is the first step that costs. The work of constructing the unfinished lines had better not be entered upon than to enter upon it and fail, leaving the road still unfinished. That would not improve the security, and would greatly add to the existing embarrassments and complications.

Although the commission has recommended debentures as a means of raising the money necessary to complete the road, I have, on consideration, concluded not to authorize their issue, or to permit the receiver to incur any indebtedness whatever for this purpose.

What I am willing to authorize the receiver to do, on the conditions and restrictions to be specified in the order, is: Out of moneys to be furnished him by the parties in interest, and not otherwise, to proceed to construct and equip the unfinished portions of the road at the lowest cost in cash; the receiver to be prohibited from contracting any debt or liability under this order in excess of the money actually furnished to and received by him. The parties in interest asking for the order must execute an instrument agreeing to furnish money sufficient to complete the road; and the trustees, for the bondholders, and the bondholders' committee, must also formally assent to this order. When the receiver shall fully complete the road in such a manner as to be accepted by the state of Minnesota, and in accordance with the acts of congress and of the state, so as to secure to the company the lands granted by congress and the state, then the court will direct the receiver to issue debentures for all sums of money advanced to and used by the receiver for the construction and equipment of the road, which debentures, unless the court shall hereafter otherwise order, shall be a first lien on all the lines of road not now completed, and on all lands which the road constructed under this order shall be the means of earning and acquiring. The order must also contain a provision by which any bondholder, at any time before the issue of debentures, or, if the court shall so order, at any time before the sale of the property under the decree, may place himself on the footing of those bondholders who shall advance the money to the receiver under this order. The court will pass an order drawn up in conformity with this opinion. Ordered accordingly.

NOTE. In conformity with the foregoing opinion, the following order was entered:
"John S. Kennedy et al. v. The St. Paul and Pacific Railroad Co. et al.

"This cause having come on to be heard on the 18th day of April, A. D. 1878, at Jefferson City, in the state of Missouri, on the application of J. P. Farley, Esq., receiver of the defend-ant, the St. Paul and Pacific Railroad Company, to be authorized to issue the debentures of said company for the purpose of constructing the uncompleted portions of said railroad, and to sell lands pertaining to the completed portions thereof, and the court, for the purpose of fully advising itself in the premises, having then appointed a commission of examination, to report all the facts necessary to enable the court to judge of such application, and said commission having so reported, and the court being fully advised in the premises, it is hereby ordered: "That the order heretofore made in this cause on the 1st day of August, A. D. 1873, appointing a receiver for said company, and authorizing him, among other things, to issue certain debentures, as modified by an order made herein on the 1st day of September, A. D. 1873, be further modified and supplemented as follows:

"1. Said receiver shall issue no debentures, in addition to those already issued, except as hereinafter provided, and only when specially ordered by the court to do so; but those already issued shall continue to have the liens and preferences heretofore secured to them by the orders of this court.

"2. Whereas, George Stephen, Donald A. Smith, Norman W. Kittson, and James J. Hill represent and show to the court that they are the equitable owners of $11,400 000 of the $15,-000,000 issue of bonds secured by the extension mortgage of April 1st, 1871, as shown and set forth in an agreement between them, as parties of the first part, and Chemet & Weetjen, Kirkhoven & Co., Lippman, Rosenthal & Co., Wurfbain & Son, Tutein, Nolthenius & De Hann, H. C. Voorhoeve & Co., and Johan Carp, the committee of the Dutch bondholders of the St. Paul and Pacific Railroad Company, parties of the second part, being an agreement of twenty-seven articles, dated March 13th, 1878, and which said $11,400,000 of bonds are held by John S. Kennedy & Co. (the plaintiffs herein), as trustees, as shown in said agreement; and whereas, the said Stephen, Smith, Kittson, and Hill propose to advance and furnish, or cause to be advanced and furnished, the full sum necessary to complete and equip the said extension lines to St. Vincent, and from Melrose at least to Fergus Falls, as required by the act of the legislature of the state of Minnesota, approved March 9th, 1878, in time to save the forfeiture therein provided for, and to secure the land grant to the company, if the court will, in this cause, authorize the receiver to construct and equip the said extension lines on such terms, and on the security of such liens, as will be equitable to themselves and as between themselves and other bondholders and all others concerned in the property and the said mortgage; and whereas, it appears that no foreclosure of said mortgage can be had in time to prevent the forfeitures provided for in said act of the legislature of the state of Minnesota, and that, if the said forfeitures are made, the security of the said mortgage will be, as to the unfinished lines, wholly destroyed; and whereas, the orders hereinafter made are based upon the fundamental consideration and condition that money enough shall be advanced to the receiver fully to build and equip the said extension lines as aforesaid; and whereas, the court has refused to issue debentures as a means of credit in advance of actual construction, or to allow the receiver to incur any indebtedness on his part, as receiver, beyond the money actually advanced:

"Now, the said receiver, out of moneys so to be furnished him, and not otherwise, is hereby authorized to construct and equip the said extension lines at the lowest possible expense and cost in cash, of which he shall keep an exact and minute account, and make monthly reports to the court; and in no event to exceed the rate of $10,000 per mile for such construction, including necessary sidings, station buildings, water-tanks, etc., and a sufficient equipment for the business of said lines.

"When the said extension lines are fully completed, in such manner as to secure and receive the land grant, and equipped for business, and ready to run, the receiver will be authorized to issue, in such form as the court shall then direct, debentures for the actual sums of money so advanced to him by the said Stephen, Smith, Kittson, and Hill, payable in gold coin of the present standard of weight and fineness established by law, with interest at the rate of eight per cent per annum, which debentures shall include interest at said rate on all sums so advanced to the receiver from the date of such advances, and which debentures shall be a first lien on all the lines of road not now completed, and on all the lands which such completion shall be the means of earning and acquiring, but not a lien on the lines of road already completed, or on the lands already earned, unless the court shall then so order and adjudge. And the right and power are hereby reserved to extend the lien of the said debentures over the lines already completed, and to the lands already earned and acquired and now owned by the company, if to the court it shall appear, upon the completion of the said extension lines to St. Vincent and to Fergus Falls, that such extension of the lien of such debentures is just and equitable.

"Notwithstanding the foregoing order in respect of debentures and the lien thereof, on the completion of the road in running order to St. Vincent, and as far as Alexandria, the court reserves the right to issue debentures for the cost of such completion, and will issue the same if the said committee of Dutch bondholders shall consent thereto, and if no good reason shall be shown or exist for not then issuing such debentures.

"3. Any bondholder under the $15,000,000 mortgage aforesaid is hereby accorded the right, at any time before the issue of debentures, and, if the court shall think just, at any time before the sale of the property under the decree of foreclosure, to pay his pro rata share of the necessary cost of the construction and equipment of the road under this order, and, on placing himself in this regard upon the same footing as the said Stephen, Smith, Kittson, and Hill, shall be entitled to have equal rights with them in respect of said debentures and the lien thereof; and power to make provisions in detail to secure this right is hereby reserved.

"4. It is expressly ordered that the receiver shall contract no debt under this order in excess of money actually received by him. Subject to this provision, the receiver is authorized to purchase all necessary material, to employ all necessary agents and servants, and to make all contracts necessary for the purposes aforesaid; but no contractor under, or other creditor of the receiver, shall have any lien for work or materials furnished the receiver, under any lien law of the state of Minnesota or otherwise.

"5. The said Stephen, Smith, Kittson, and Hill shall jointly and severally execute an instrument approving of this order, and agreeing to furnish all the money herein contemplated, which shall stand as a security to any contractor or laborer under the receiver who shall or may be injured by their failure to comply herewith, and agreeing to procure within sixty days the formal and duly authenticated assent of the said Dutch committee to this order; and the said instrument shall be filed in this cause.

"6. The receiver shall cause all inspections and other proceedings to be had necessary to be taken to secure the acceptance of said roads by the state of Minnesota, as constructed, in compliance with the acts of congress and of said state, and to secure the conveyance to said company of the lands pertaining to such extension lines.

"7. Before this order shall take effect, there shall be filed in this court the duly authenticated assent to its provisions of the new trustees of said $15,000,000 mortgage, and of John S. Kennedy and John S. Barnes, the trustees named in said agreement between said Stephen, Smith, Kittson, and Hill and said Dutch committee; and the approval in writing of the terms hereof by Messrs. John B. Henderson and T. C. Reynolds, the commission appointed by said order of April 18th, 1878.

"8. And it is further ordered, that the said Kennedy and Barnes, the plaintiffs herein and trustees as aforesaid, shall not part with the possession of said $11,400,000 of bonds, or any of them, without the special order of the court, and that a copy of this order be served on the Mercantile Safe Deposit Company, in the city of New York, and proof of service by some disinterested person shall be filed in this cause.

"9. It is further ordered, that the application of the receiver for leave to sell lands be continued for further consideration; and the power is reserved to modify the provisions of this order, and to make further orders from time to time.

"The clerk is ordered to make a complete record of the petition of the receiver, the order to show cause thereon, the order of April 18th, 1878, and the separate and joint reports of the commissioners named therein (except the map appended to the report of Mr. Reynolds and the copy of the act of the legislature of March 9th, 1878), and of this order.

"Thus made and ordered this 31st day of May, A. D. 1878.            John F. Dillon, Judge."

Under the authority of this order, the receiver, out of moneys furnished by Mr. George Stephen and others, constructed, prior to December 1st, 1878, one hundred and twenty-five miles of railroad, extending from Melrose to Alexandria, and from Crookston to St. Vincent and the international boundary line at Emerson, at an aggregate cost, as reported, of $1,016,300, thereby giving an unbroken railway connection between St. Paul and the Canadian system of railway in Manitoba. The road thus constructed by the receiver was inspected and accepted by the governor of the state; and the court afterwards, on December 20th, 1878, directed the receiver to issue debentures for the cost thereof.

On April 11th, 1879, a final decree in foreclosure in the suit by the trustees was passed, ordering the sale of the mortgaged premises, including the lands, as an entire property, to the highest bidder, but not for less than $1,500,000, with directions that the proceeds of the sale should be applied, first, to the payment of costs and the services and expenses of the trustees; second, to the payment of the debentures, and next to the payment of the bondholders pro rata. On June 14th, 1879, the entire property was sold under the decree to the St. Paul, Minneapolis, and Manitoba Railway Company, for the sum of $1,600,000.

At the June term, 1879, the sale was confirmed, without opposition from any of the bondholders or others, and out of the proceeds the debentures issued by the court were all called in and paid, and the receiver directed to turn over the property to the purchasers.

---

KENNEDY (STOVER v.). See Case No. 13,510.

KENNEDY (UNITED STATES v.). See Cases Nos. 15,523–15,525.