## FARMERS' LOAN & TRUST CO. v. BURBANK POWER & WATER CO.
### (PUBLIC SERVICE COMMISSION OF STATE OF WASHINGTON, Intervener).

(District Court, E. D. Washington, S. D.    May 3, 1912.)

No. 280.

RECEIVERS (§ 117[*])—RECEIVERS' CERTIFICATES.

Where, in a suit to foreclose a mortgage on the works of a public service irrigation company, a receiver was appointed, and it appeared at the instance of the Public Service Commission that the construction of the works had been faulty, and that $135,000 was necessary to reconstruct and extend the works, so that the same would provide adequate facilities, the court had no jurisdiction at the instance of the Public Service Commission to order its receiver to issue receivers' certificates for that sum, and to proceed with the work at the expense of the lienholders.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 204; Dec. Dig. § 117.[*]

Receivers' certificates, see notes to Postal Tel. Cable Co. v. Vane, 26 C. C. A. 350; Nowell v. International Trust Co., 94 C. C. A. 601.]

In Equity. Bill by the Farmers' Loan & Trust Company against the Burbank Power & Water Company and the Public Service Commission of the State of Washington, intervener. On petition for the issuance of receivers' certificates for improvements in the Burbank irrigation system. Denied.

Geller, Rolston & Horan and Graves, Kizer & Graves, for complainant.

W. V. Tanner, Atty. Gen., and Stephen V. Carey, Asst. Atty. Gen., for intervener.

RUDKIN, District Judge. On the 24th day of August, 1911, the Public Service Commission of Washington, on its own motion, filed its complaint before itself against the Burbank Power & Water Company, defendant, from which it appears:

"That the defendant, Burbank Power & Water Company, is a corporation existing, organized, and doing business under and by virtue of the laws of the state of Washington, and is engaged in the business of owning, controlling, operating, and managing a water system for hire in Walla Walla county, Wash. * * *

"That the said water system of the defendant consists of and includes real estate, easements, fixtures, personal property, dams, dykes, headgates, weirs, canals, reservoirs, flumes, main ditches, and laterals, pipes, pumping apparatus, and other structures and appliances, which are owned, controlled, operat-

---

[*]For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ed, managed, and used by said defendant in connection with and to facilitate the supplying, storing, distributing, selling, furnishing, diverting, carrying, apportioning, and measuring of water for the purpose of irrigating about 13,500 acres of arid lands located in the western part of Walla Walla county, Wash., near the junction of the Snake and Columbia rivers, said land lying east of the Columbia river and south of the Snake river. * * *

"That the said water system consists of four principal parts, to wit: First. A canal by means of which water is diverted from the Snake river. Second. A power house to elevate the water diverted by the canal into two main distribution ditches. Third. An 85-foot lift ditch, constructed for the purpose of distributing water to about —— acres of land. Fourth. A 45-foot lift ditch, constructed for the purpose of distributing water to all lands in the defendant company's project not capable of being served by the 85-foot lift ditch. Besides the canal, power house, and main ditches hereinabove mentioned, said water system includes a large number of smaller ditches called laterals, intended to divert the water from the main ditches to the separate tracts of land owned by individual consumers."

The complaint then avers that the defendant has failed to furnish adequate and efficient service to its consumers, and that its plant and works are defective and insufficient in the following particulars:

"The canal by which water is diverted from the river is too narrow and too shallow. The power house and the facilities installed therein are of improper design and of insufficient power to elevate the necessary water from the canal to either of the main distributing ditches, and no pumps or other apparatus whatever have been installed with which to supply water through the 45-foot lift ditch. The main distributing ditches are improperly constructed, in this: that they have not been lined so as to convey water when actually placed in them. The lateral ditches have not been cleaned and repaired, and an insufficient number of laterals have been constructed. The system of defendant is further defective, in this: that no provision at all has been made by which to divert water from the river during the summer months when the river is low."

A hearing was had on this complaint on the 5th day of September, 1911, before the Public Service Commission, and on such hearing the Commission found, among other things:

"That the Burbank Power & Water Company has utterly failed in performing its duty and obligations to the public, in this: That it has failed to furnish a sufficient amount of water to irrigate the lands, and in many instances failed to furnish any water whatever to lands embraced within the project, and which it advertised would be furnished with water, and which it held itself out to furnish with water for irrigation purposes. That much of the lands embraced within such territory was owned by the Burbank Power & Water Company or its predecessors in interest, and has been sold by it with water rights and whereby the Burbank Power & Water Company agreed to furnish a specific amount of water at all times between the 1st day of April and the 1st day of October of each year to properly irrigate the lands. That the Burbank Power & Water Company has failed to furnish any water to the lands contiguous to what is shown on said plat as the lower canal, and that it has not constructed and completed the flume or canal so as to carry the water over the lands shown therein, and the pumping plant employed at the power house is insufficient and inadequate to pump a sufficient quantity of water to irrigate the lands embraced within the project, and an additional hydraulic pumping unit is required to be installed at said plant in order to enable the defendant to furnish water. That, in addition thereto, at certain seasons of the year, when the water is required, the volume of water flowing through the canal is insufficient to furnish sufficient power to do the necessary pumping, and, in order for the defendant to furnish water at such season of the year, it will be necessary for it to install steam turbines connected with centrifugal pumps with pipes extending into the Snake river from

which to procure the necessary water. That it will be necessary in order for the defendant to furnish sufficient water to complete the lower canal in such a manner as to carry sufficient water to irrigate the lands within said project, and to construct laterals for the proper distribution thereof. The Commission finds that the manager and chief engineer of said company has prepared plans and estimates and submitted the same to the defendant company which, if carried out, will enable the defendant to furnish ample and sufficient water to the farmers within said district. That such plans cover the installation of the second hydraulic unit before mentioned, which is to be composed of one twin horizontal turbine directly connected with a cycloidal rotary pump, the turbine connected therewith to be designed for a nine-foot head, and requiring 690 cubic feet of water per second. That it is designed to pump 67 cubic feet of water per second to the lower canal.

"The Commission further finds: That the turbine has already been designed and built by the Allis-Chalmers Company, said Allis-Chalmers Company having caused the pump connected therewith to be constructed under their direction. Such plans provide 1,200 horse power steam pumping plant consisting of four steam turbines directly connected to centrifugal pumps supplied by water to boilers consuming California fuel oil or to be piped by gravity from Humorist, a point on the Oregon-Washington Railroad & Navigation Company's line to the power plant. That the plans further show the work necessary to be done in completing the lower canal, the additions to consist of one-half mile of galvanized steel flume, 1,200 feet of wooden stave pipe, 3,000 feet of wooden stave siphon, and the balance of approximately 2½ miles to be of open ditch. In addition thereto certain laterals are provided for in said plans unnecessary to detail in this finding.

"The Commission further finds that it will be necessary to make certain repairs upon the upper canal by cleaning out and enlarging the same, all of which is covered by the plan submitted to the company aforesaid.

"The Commission further finds that, in order to economically perform the labor outlined in the plans, the work should be entered upon prior to the winter months.

"The Commission finds: That the work and material before mentioned will necessitate an outlay of approximately $135,000. That the land embraced within the project owned by the company is without any value whatever excepting as the land may be supplied with water for irrigation purposes. That the defendant company owns within said project approximately 3,700 acres of land, and, when sufficient water is provided for irrigation, the said land has a valuation of approximately $200 per acre. In addition thereto, the reasonable value of water rights to the remainder of the said land embraced within said project is approximately $100 per acre, in addition to the annual maintenance charge. That the improvements above described and the expenditure of the money above mentioned will add very greatly to the value of the property of the defendant company, and the Commission finds that such expenditure and such improvements should be forthwith made."

It was thereupon ordered:

"That the defendant company forthwith, actively and in good faith, proceed with the improvement of its plan: that it take steps to at once cause the twin horizontal turbine and pump constructed by the Allis-Chalmers Company to be installed in the power house; that it immediately proceed with the installation of the auxiliary steam pump plant as outlined in the plans furnished the company by its engineer; that it forthwith proceed with the completion of the lower canal and laterals as outlined in the plans before mentioned, and that the company construct such laterals from the upper canal as may be necessary to properly irrigate all land lying under the upper ditch in accordance with the contract entered into where such water is demanded."

It was further ordered that the management of the defendant company report to the Commission within 30 days the steps taken to comply with the order, and from time to time thereafter as directed, and the Commission reserved the right to make such further orders from

time to time as might be necessary to secure prompt obedience to the order already made. Thereafter, on the 9th day of December, 1911, and before any attempt was made to comply with the order of the Public Service Commission on the part of the defendant company, a bill of complaint was filed in this court by the Farmers' Loan & Trust Company of New York to foreclose a mortgage or deed of trust executed by the defendant company to the complainant herein to secure bonds of the company in the sum of $500,000, and a receiver was appointed to take charge of and conserve the property of the company pending the foreclosure. The foreclosure suit will be ripe for final decree within 30 or 60 days from this date, and the receivership will then terminate, unless the court is compelled to continue it for the purpose of carrying out the orders of the Public Service Commission. On the 29th day of January of this year the Public Service Commission filed its petition in intervention in this court, setting forth the proceedings had before it, and praying that the court issue receiver's certificates in the sum of $135,000 for the purpose of carrying out its order of September 16th last.

I have quoted thus at length from the proceedings before the state Public Service Commission for the purpose of disclosing the nature and magnitude of the work which the intervener is seeking to thrust upon this court and its receiver. It will be seen at a glance that the court is not asked to merely conserve and keep in repair the property in its charge until an order of sale can be made. It is asked to go far beyond this. It is asked to reconstruct a faulty irrigation system, and for this purpose to displace in a large measure the lien on the property created by the deed of trust; and this against the wish and earnest protest of the lienholders. There are two unanswerable objections to the granting of the relief prayed for. First, I do not think it is within the power or jurisdiction of the court to do so; and, second, if it is within the power of the court, sound judicial discretion forbids its exercise.

In Bibber-White Co. v. White River Val. Electric R. Co., 115 Fed. 786, 790, 53 C. C. A. 282, 286, the court said:

"The power of a court, which has appointed a receiver in an equity cause and taken possession of a railroad, to subordinate the existing liens upon the property to the expenses of the administration, including those of operating and maintaining it in proper repair, cannot be challenged. But the power to postpone existing liens to liens created by the court for the purpose of completing an unfinished railroad has rarely been exercised, and ought not to be exerted unless it can be done without ultimate loss to the existing lienholders. It is to be exercised with great caution, and, if possible, with the consent or acquiescence of all the parties in interest. Wallace v. Loomis, 97 U. S. 146 [24 L. Ed. 895]; Kennedy v. Railroad Co., 5 Dill. 519 [Fed. Cas. No. 7,707]; Union Trust Co. v. Illinois Midland R. Co., 117 U. S. 434 [6 Sup Ct. 809, 29 L. Ed. 963]. In Jerome v. McCarter, 94 U. S. 734 [24 L. Ed. 136], the court intimated doubt of the propriety of the exercise of the power to the prejudice of the prior lienholders without their consent; but in Miltenberger v. Railroad Co., 106 U. S. 287 [1 Sup. Ct. 140, 27 L. Ed. 117], the court upheld receiver's certificates, with a prior lien to that of a pre-existing mortgage, created for the purpose of obtaining rolling stock, and for building 6 miles of road and a bridge, part of the main line of a railroad 92 miles long. The latter is the only reported case which has been called to our attention in

which the exercise of the power has been approved, where it was not invoked at the instance of the prior lienholders, or sanctioned subsequently by their acquiescence, or where their conduct did not create an estoppel."

In Illinois Steel Co. v. Ramsey, 176 Fed. 853, 865, 100 C. C. A. 323, 335, the court said:

"When a court of equity takes possession of railroad property through its receiver for the benefit of all having an interest therein, its honor and integrity is pledged as a guaranty that, so far as the court can control the matter, everything will be done to conserve and protect that property. It is because of this responsibility and obligation that in proper cases the court may authorize its receiver to issue certificates for the purpose of raising money where the income of the road is insufficient for the proper conservation of the same pending the litigation. The power to authorize the issuance of certificates is limited by, and is coextensive with, its obligation to conserve the property in its custody, and any expenditure of money that has not this primary purpose for its object is beyond the power of the court and unauthorized. To create an indebtedness which shall have priority over the claims of all persons interested in the property taken possession of by the receiver is a serious matter."

Furthermore, how is the court or its receiver to carry out this stupendous task? Will the receiver or the Public Service Commission supervise the work? Will the work, when completed, prove beneficial to the property or add one dollar to its value? If past plans have proved defective and insufficient, is there any certainty that a receiver will devise better ones? Counsel for the state has argued that the plant has changed hands three or four times, that each succeeding owner has proved more inefficient than the last, and that the desired result cannot be accomplished through private enterprise. Grant all this; but what assurance has the court that its receiver will succeed where all others have failed? If the difficulties encountered by these promoters have proved so great that one after another has become bankrupt, will the court and its receiver do better? May the court not find itself unable to redeem its certificates and its pledges? The court's decree cannot bring water from the river, its mere fiat cannot raise funds, and any attempt on its part to carry out the order of the Public Service Commission through the agency of a receiver and receiver's certificates, under the circumstances disclosed by this record, would be injudicious in the extreme and a gross abuse of discretion.

The complaint in intervention is therefore dismissed.