# CHARLESTON.

HARPER *et al.* v. SOUTH PENN OIL COMPANY *et al.*

Submitted November 30, 1915.   Decided December 7, 1915.

1.  MINES AND MINERALS—*Oil and Gas Lease—Accounting—Parties—Assignees.*

    Where lessors in an oil and gas lease on a tract of land containing 115 acres, identified by adjoiners, and consisting of two or more parcels conveyed by different grantors, executed sealed instruments purporting to assign all the delay rentals and oil and gas royalties reserved by them in productions from the leased premises, of the execution of which assignments they notified the lessee and thereby authorized it to pay all such rentals and royalties to the assignees, "reserving nothing" to themselves therein, and which royalties and

rentals accruing under the terms of the lease from the entire tract, for several years thereafter, the lessee, pursuant to such authorization, caused to be paid and delivered to the assignees, the claimants under such assignments are necessary parties to a bill by the lessors or those in privity with them, claiming adversely to such assignees, whereby they seek an adjudication limiting the oil and gas interest so assigned to one only of the several parcels constituting the leased premises, and an accounting to plaintiffs for all the rentals and royalties chargeable to other parcels thereof.  (p. 301).

2.   PARTIES—*Necessary Parties—Interest in Litigation—Equity.*

Whenever, in a suit in equity, it appears that persons not parties to the litigation may have, or claim, direct interests in the subject matter involved, or that in their absence the rights of the parties thereto can not fairly be determined or further litigation in respect thereof finally foreclosed by an adjudication therein, the court ordinarily ought in such circumstances, when seasonably requested by parties to the cause, to require plaintiffs to convene them, that justice may be done, performance of the decree rendered safe to those compelled to obey it, and further litigation in respect thereof thereby foreclosed.  (p. 302).

3.   APPEAL AND ERROR—*Decisions Appealable—Opinion in Interlocutory Order.*

Except when otherwise provided by statute, a decree, to be appealable, generally must adjudicate all questions raised in the cause by proper pleadings or otherwise, settle the principles on which relief is to be administered, and leave nothing undetermined except the necessary application of such principles to the facts of the case in respect of the rights of the parties thereto in relation to the subject matter of the litigation.  A mere expression of an opinion in an interlocutory order, stating reasons for rulings on exceptions to an answer, not replied to, and not purporting to settle all the principles of the cause, is not an appealable order.  (p. 303).

4.   SAME—*Decree Adjudicating Rights of Third Persons—Reversal.*

This court will reverse a decree adjudicating the rights of persons not parties to the cause, when it is reasonably apparent they are prejudiced by such adjudgication.  (p. 303).

Appeal from Circuit Court, Roane County.

Suit by Nancy C. Harper and others against the South Penn Oil Company and others.  From decree for plaintiffs, the defendant named appeals.

*Reversed and remanded, with directions.*

*A. B. Fleming, Charles Powell* and *Kemble White,* for appellant.

*Pendleton, Mathews & Bell,* for appellees.

Lynch, Judge:

As owners in fee of two adjoining tracts of land, one containing 49 1-2 acres, known as the "Connell tract", the other 45 1-4 acres, known as the "Lewis tract", and of the equitable title to 15 acres, Jordan Harper and Nancy C. Harper, his wife, on April 16, 1900, for oil and gas purposes, leased to the South Penn Oil Company "115 acres more or less", identified by adjoiners, but described as the lands conveyed to the lessors by Connell and Lewis. In addition to the consideration of one dollar paid, the lessee covenanted to deliver to the credit of the lessors the equal one eighth part of all oil produced and saved from the premises, and to pay them $100 per year for the gas from each gas well drilled and operated thereon. The parties further stipulated that the lease should become void unless a well should be completed within one year from its date, or unless the lessee should pay "at the rate of $5.75 quarterly in advance for each additional three months such completion is delayed"; and that "the completion of such well shall be and operate as a full liquidation of all rentals under this provision during the remainder of the term" of ten years and as long thereafter as oil or gas is produced in paying quantities.

On March 18, 1904, the lessors granted to T. H. Kemper "one half of all the oil and gas royalties, income and rentals that may hereafter arise therefrom or accrue upon the real estate hereinafter described by virtue of any oil and gas lease or leases now on said several tracts of land or which may hereafter be placed" thereon. In the instrument the grantors described the lands in which the rights were conveyed as containing "115 acres more or less" and as being "fully described in the deed from Edward Lewis to Jordan Harper dated April 22, 1872". Thereby they also granted to Kemper "the right and privilege of entering upon said several tracts of land or any of them, or any part thereof, and to do what-

ever is necessary to a full, complete and perfect enjoyment of the rights herein conveyed unto him''.

On April 6, 1904, the lessors notified the South Penn Oil Company of the grant to Kemper of one half the royalty interests and rentals in the ''115 acres more or less'', and that the lessors had reserved the other one half thereof to themselves. They thereby authorized and instructed the company to pay Kemper one half the quarterly delay rentals and the same share of the gas rentals and oil royalties accruing and due from the date of the deed, under the terms of said lease and grant.

On February 27, 1905, the Harpers by deed granted to Ora D. Kemper and his co-grantees ''one half of all the oil and one half of the gas in and underlying'' 115 acres more or less, ''including the one half of all the rentals that may accrue by reason of any lease now existing upon the said land'', describing it by the same adjoiners (except one) as in the lease and as ''being the same land conveyed to Jordan Harper by Edward Lewis''. That conveyance was made subject to the lease to the South Penn Oil Company, provided the lands should be operated thereunder for oil and gas, but should that lease become void the grantees were vested with the exclusive right to enter upon the lands and operate the same for oil and gas, and, in that event, should these minerals be found in paying quantities, they were to retain 63-64 of the oil produced and deliver the remainder to the grantors, and to pay to the latter $50 per year for each gas well operated on the premises.

Again, on April 13, 1905, the lessors notified the South Penn Oil Company that they had granted to O. D. Kemper and others ''the remainder of the royalty of'' the ''115 acres more or less'', and authorized and instructed it to pay to such grantees one half the quarterly delay rentals and ''all the gas rentals or royalties and all of the oil royalty from said land''.

Jordan Harper died testate in September, 1907, and by his will, duly probated, devised all his real estate in fee to his wife, Nancy C. Harper, his co-lessor and grantor in the oil and gas lease and the subsequent oil and gas royalty deeds.

On January 1, 1907, the South Penn Oil Company transferred the lease on the 115 acres to the Hope Natural Gas

Company; and on October 7, 1907, the gas company re-
assigned to the oil company all the oil and oil rights therein.
The oil company, acting for itself and the gas company,
entered upon the leased premises and on December 3, 1908,
completed a well thereon, discovering gas in paying quanti-
ties, the well being drilled on the Connell tract. In the mean-
time, T. H. Kemper and O. D. Kemper and his co-grantees
conveyed to the Hope Natural Gas Company a small part of
the royalties theretofore conveyed to them by the Harpers.

Thereafter, without complaint or objection on the part of
Mrs. Harper, the South Penn Oil Company or the Hope
Natural Gas Company paid to the several assignees of the
lessors, and such assignees received, in the proportions stated
in the "transfer notices" above mentioned, all of the oil and
gas royalties and rentals accruing from the well, claimed by
such assignees to be so due and payable to them under the
terms of the lease and the several assignments of the royalties,
none of which were paid to or claimed by Nancy C. Harper as
devisee of her husband; except that G. A. Harper does testify
that on several occasions he, acting on her behalf, requested
and demanded payment to her by the oil company of a share
of the productions from the Connell tract. The South Penn
Oil Company also paid to such assignees, in like proportion,
the delay rentals accruing between the dates of the deeds to
them and the date of the completion of the well.

This gas well the South Penn Oil Company transferred to
the Hope Natural Gas Company on March 10, 1909; and it
on June 15, 1910, re-transferred the same and the oil royalty
acquired by it from the Kempers to the South Penn Oil Com-
pany, because in the meantime the gas well became a produc-
ing oil well. T. H. Kemper and O. D. Kemper and their
associates and assigns executed what, in the parlance of the
oil business, are usually termed "division orders", whereby
to each of them was apportioned the respective share of the
oil productions from the well, claimed by them under the
terms of the lease and the royalty deeds; in accordance with
which orders, from the time the well drilled produced oil
until the institution of this suit in March, 1911, the one eighth
oil royalty therefrom was delivered or paid by the oil com-
pany to such claimants, no part thereof being paid to Mrs.

Harper; nor, as the oil company contends, did she demand or claim payment of any part thereof. On June 30, 1910, the Hope Natural Gas Company transferred the gas and gas estates in the 115 acres and its gas rental interest therein to the United Fuel Gas Company.

On February 27, 1911, Nancy C. Harper, George A. Harper and others (presumably the heirs at law of Jordan Harper) joining with her for some reason not apparent, granted unto J. M. Harper and John M. Baker, in consideration of legal services to be performed by the grantees in the recovery of whatever rentals and royalties the grantors might be entitled to receive from the leased premises, "an equal one half of all the oil and gas rentals, royalties and incomes which said first parties or any of them may have or hereafter receive or be entitled to in and under said three several tracts of land" so leased to the South Penn Oil Company, describing the lands as being the same conveyed to Jordan Harper by Edward Lewis, D. F. Connell and in part by the executors of Connell; with the provision that "if all of said first parties shall wholly fail to establish any right to any interest in the oil and gas royalty or rentals, and shall not receive or be entitled to receive anything therefrom, then said J. M. Harper and John M. Baker shall have no other fee for their services,   *   *   * and said first parties shall not be liable in any sum whatever to said second parties beyond said oil and gas rentals and royalties hereinbefore granted to them".

Conceiving themselves to be entitled to the one eighth oil royalty and all the gas rentals derived or derivable from any operations conducted on the Connell 49 acre tract, Nancy C. Harper, J. M. Harper and John M. Baker filed their bill against the South Penn Oil Company, the Eureka Pipe Line Company and J. A. Taylor, its bookkeeper, setting out in detail the title to the several tracts of land, the execution of the lease to the South Penn Oil Company, the completion of a well on the Connell tract, its character and the productions therefrom, the liability of the lessee for payment of the annual gas well rentals and oil royalties stipulated in the lease, and failure and refusal of the two companies to pay plaintiffs a share of such rentals and royalties, although, as the bill charges, repeated demands had been made therefor. Where-

fore plaintiffs pray a disclosure of the quantity and value of all oil produced and saved from the well; "that the court will define and fix by its decree the rights of the plaintiffs and the South Penn Oil Company, under and by virtue of said lease, as far as it relates to the said 49 1-2 acres of land"; that the oil company be required to account for and pay to plaintiffs the full amount of such gas rentals and oil royalties, and interest on same, and for general relief.

The demurrer of defendants to the bill, assigning as ground want of proper parties, was overruled. So far as inconsistent with its claims by virtue of the oil and gas lease executed to it by the Harpers on the 115 acres, the South Penn Oil Company, by answer, denied all the material allegations of the bill, and set out at length the various assignments by the lessors to the Kempers and others, the operations on the Connell tract, the character of the productions therefrom, payments by it of the rentals and royalties to such assignees, and, among other matters not now necessary to detail, prayed that the Kempers and their assigns and associates be made parties to this proceeding, to the end that their respective rights and interests be determined herein in order to avoid a multiplicity of suits. Upon exceptions by plaintiffs, those parts of the answer setting out the interests of the assignees of the lessors were stricken out, on the theory, as appears from the interlocutory order, that the assignments to the Kempers and others on their face limited the oil and gas royalties and rentals to the Lewis 45 acre tract, and hence that the assignees had no interest in the Connell tract, and were not necessary parties to this suit. But plaintiffs were required to amend their bill and make defendants thereto the United Fuel Gas Company and the Hope Natural Gas Company.

Before entry of the decrees appealed from, receivers were appointed to take charge of and sell the royalty oil held in the lines of the defendant pipe line company to the credit of the Connell well; and they reported $1016 as the proceeds of sales made by them from productions occuring since institution of the suit. The cause was also referred to a commissioner to state an account of the royalties; but he did not perform any service under the reference, none being necessary because of stipulations of the parties. By the decrees complained of, the

court adjudicated plaintiffs to be the owners of all the oil royalties and gas rentals accruing from the Connell tract, and required the receivers to pay over to them the funds in their hands, the South Penn Oil Company to pay to plaintiffs henceforth all the oil royalties accruing from the well operated on the Connell tract and other producing wells thereafter drilled thereon, and the United Fuel Gas Company to pay to them the stipulated rental for the gas from said well and any other wells that might be operated for gas on such tract, but decreed that plaintiffs were estopped from asserting any claim to rentals or royalties accruing prior to the institution of the suit.

The first, and as we view it the controlling, question upon this review is whether the Kempers and those associated with them, as assignees of oil and gas royalties and rentals payable under and by virtue of the lease, ought to have been made parties defendant to the bill; or, stated in a different form, whether they have such interest in the subject matter or result of the suit that a decree awarding the relief sought will, if granted, affect their rights under such assignments.

Without expressing any opinion upon the evidence as to whether Mrs. Harper or any one for her made any demand upon the South Penn Oil Company for a share of the royalties and rentals on productions derived by that company from operations on any part of the leased premises, it must be noted that prior to the institution of this suit the oil company paid to the assignees of the lessors all such royalties and rentals; that, as claimants through the lessors, the assignees accepted such payments, believing themselves entitled thereto by virtue of the assignments; that such payments were made and received during the period intervening between the completion of the well in 1908 and the institution of this suit in 1911, and included the delay rentals prior to the completion of the well; and presumably such assignees would, if given an opportunity in this suit, still claim all the rentals and royalties under the lease and the grants so made to them. Whether they can maintain their right thereto is a question, we think, not now involved, and one that can not be determined until they have an opportunity to litigate it in this or some other proceeding. Their right to test that question is not and can

not be precluded by any decree herein, or in any other cause to which they are not parties.

The divestment or destruction of a title by a decree, in a cause to which the owner is not a party, is not within the power of any judicial tribunal. Ordinarily, a court ought to require any person or persons, however numerous, not parties thereto, to be convened in the suit, whenever it appears that the interest or estate of such persons may immediately and injuriously be affected by any adjudication therein, to the end that their respective rights may be fixed and determined, to render safe performance by those required to obey the decree, and to prevent further litigation regarding the rights and interests involved. . 16 Cyc. 181, 188; *Beckwith* v. *Laing,* 66 W. Va. 246. And when the persons whose rights are to be affiected are not parties to the cause, a decree pre-judging their rights will be reversed and the cause remanded, that they may be made parties thereto. *Oil Co.* v. *Moore,* 56 W. Va. 540; *Ralphsnyder* v. *Titus,* 63 W. Va. 469.

While the decrees complained of by defendants do not specifically adjudicate the rights of the claimants under the oil and gas royalty transfers, they do so construe the instruments granting such rights as to limit them to the Lewis tract only; and the decrees purport to deny to the absent claimants rights theretofore enjoyed by them. Though not wholly devoid of ambiguity or uncertainty, the assignments to the Kempers and their associates afford colorable grounds for the contention that the parties thereto did not intend so to restrict and limit the rights granted to one parcel only of the 115 acres. The Kempers and the lessee construed the royalty grants as embracing the entire 115 acres. And, as observed, the lessors, in the notices referred to, authorized and instructed the lessee to pay to the assignees all the oil and gas rentals and royalties in productions upon the 115 acres, the lessors therein "reserving nothing" to themselves. They described the land in which the royalties were conveyed as containing 115 acres and as being the tract conveyed to Jordan Harper by Edward Lewis; yet the Lewis tract contained less than half that quantity. These facts are detailed, not to indicate an opinion as to the proper construction to be given these instruments, but for the sole purpose of show-

ing the necessity for convening the claimants of the royalty interests as parties to the cause, for the reasons deemed necessary by the authorities heretofore cited. For this purpose, we think the hearing of the cause ought to have been stayed until such claimants were made parties thereto.

Appellees resist reversal for want of proper parties, on the ground that, as the decree entered January 29, 1913, not appealed from, adjudicated the rights of the parties, it effectually denied the right of the royalty claimants to participate in the royalties in the productions from the Connell tract, and, hence, that appellants are precluded from reopening the cause for a re-adjudication of such rights. That decree, however, only purports to express, as a reason for sustaining the exceptions to appellants' answer, the court's *opinion* that the interests of the assignees were restricted to the Lewis tract. It is merely an interlocutory order, and does not constitute an adjudication of the principles of the cause. ''A decree reciting the expressed opinion of the judge, but not followed by the sentence of the law, is not appealable''. *Hill* v. *Cronin,* 56 W. Va. 182; *Pickens* v. *Daniels,* 58 W. Va. 331. The parties had not then joined issue on any pleading; plaintiffs had not replied to the answer. The order was in nowise appealable. It has none of the elements of finality or appealability.

But, conceding the decree to be an express adjudication as to the interests of such assignees, nevertheless it related to but a single phase of the case as presented by the bill, and, for this further reason, lacked appealability. To be appealable, as one adjudicating the principles of the cause, an interlocutory decree must adjudicate, not some, but all the questions raised in the pleadings or otherwise, and determine the principles and rules by which relief is to be administered to the parties, so that it is only necessary to apply such principles and rules to the facts in order to fix the relative rights of the claimants in the subject matter of the suit. *Wood* v. *Harmison,* 41 W. Va. 376; *Shirey* v. *Musgrave,* 29 W. Va. 131; *Hill* v. *Cronin, supra.* And, as a general rule, except where statutes otherwise provide, an order overruling or sustaining objections as to parties, directing, permitting or refusing amendments as to parties, or the substitution or addition of

parties, is not appealable.  3 C. J. 477.  The decree propounded May 28, supplemented by the one entered September 15, from both of which the oil company has appealed, did adjudicate the principles of the cause, thereby sustaining the view that the circuit court did not deem or treat the interlocutory order as one determining the rights of the parties before it when the final decrees were entered.

Nor do the many cases cited by appellees support the contention as to the appealability of the interlocutory order. They merely hold, and rightly we think, that a decretal order settling the principles of the cause and the rights of the parties thereto is appealable, though to effectuate and execute it other subsequent orders may be and often are essential.  To be final, in the sense that it is appealable, a decree must be entered on the merits, and adjudicate the matters in controversy between the parties to the cause.  *Core* v. *Strickler,* 24 W. Va. 689; *Hill* v. *Als,* 27 W. Va. 215.  And if a decree having finality is appealed from within the time fixed by statute, the appeal brings up for review every former interlocutory order entered in the cause not appealable.  *Stout* v. *Manufacturing Co.,* 41 W. Va. 340.

In *Workingmen's Association* v. *Reynolds,* 138 Ga. 123, the appellate court held unappealable an order denying admission of a party, on the theory that the case could proceed against the other defendants then before the court for other relief obtainable under the allegations of the bill.  So in *Miller* v. *McLaughlin,* 135 Mich. 646, the court "overruled a plea to require another party to be made a defendant", and the order was held to be not final, because "It deprives appellants of no property rights and works no injury to such rights, and could not damage them until a final decree was entered, and then only so far as it might affect such decree".  Where upon the trial it appeared that plaintiff had assigned his interest in the award sued on to another, who was substituted in his stead as plaintiff, and the latter dismissed the proceeding and brought another action in his own name, it was held, in *Hall* v. *Vanier,* 7 Neb. 397, that the order of substitution was not final or conclusive.  And, in *Clark* v. *Land Co.,* 141 Ga. 110, it was held that a writ of error does not lie to an order refus-

ing to make a stranger a party to a proceeding, in the absence of a final judgment in the case. ,

For the reasons assigned, we reverse the decrees appealed from, ·and remand the cause with direction that the circuit court require the assignees of the oil and gas royalties and rentals to be made parties defendant, and for further proceedings to be had therein according to the principles governing courts of equity.

*Reversed and remanded, with directions.*