# CHARLESTON.

Joseph H. McDermott v. Pentress Gas Co. *et als.*

Submitted March 12, 1918. Decided April 16, 1918.

1. Appeal and Error—*Continuance—Grounds—Discretion.*
   A motion to continue or delay is addressed to the sound discretion of the tribunal before which the motion is made, and unless that discretion is abused the appellate court cannot interfere. (p. 232).

2. Equity—*Denials—Admissions.*
   Material allegations of a bill in equity not expressly denied will be taken as true and no proof thereof will be required. (p. 232).

3. Receivers—*Appointment—Notice of Application.*
   Where the bill prays for the appointment of a receiver, no notice of application for the appointment need be given if made in term, the bill itself importing the notice required. (p. 232).

4. Same—*Issuance of Certificate.*
   Equity has power to direct the issuance and sale of receiver's certificates and prefer them to prior subsisting liens and encum-

brances for the preservation of the property affected from waste, impairment or loss until such time as may be required to put the property into a salable condition.   (p. 234).

5. SAME—*Issue of Certificate—Priority—Waiver.*

But receiver's certificates authorized for the operation, improvement or development of a business, other than a railroad or other utility of paramount public importance, cannot lawfully displace prior liens unless the holders of such liens waive them either expressly or impliedly.   (p. 235).

Appeal from Circuit Court, Monongalia County.

Suit by Joseph H. McDermott against the Pentress Gas Company and others.  Decree for plaintiff, and the Pentress Gas Company and others appeal, and moved to reverse under Barnes Code 1916, c. 135, § 26 (Code Supp. 1918, c. 135, § 26 [sec. 5006]).

*Motion overruled, and decree affirmed.*

*Stewart & John,* for appellants.

*Cox & Baker,* for appellee.

LYNCH, JUDGE:

This case is before us upon a motion to reverse, a motion authorized by section 26, chapter 135, Code 1916.  The plaintiff, a stockholder and an alleged creditor, brought this suit and in his bill prayed for the appointment of a special receiver of the property of Pentress Gas Company, a corporation, of which he was president and general manager, and named numerous defendants thereto, some of whom are the owners of mortgage bonds which are liens upon the property and others who represent the bondholders by their authority and still others whose interests are set out in that pleading, and also prayed for an injunction and for special and general relief.

To the bill several of the defendants demurred and, their demurrer being overruled, answered and in part denied and in part admitted some of its allegations and neither denied nor admitted others and demanded full proof of those not admitted.  The allegations are ample and yet not unduly prolix.  They charge the insolvency of the Pentress Gas Com-

pany; its lack of funds to pay rentals due or about to become due upon oil and gas leases which constitute its principal assets; its lack of credit to obtain funds and the danger of loss to the detriment of its secured and unsecured creditors and its stockholders without financial aid; suits threatened by landowners to cancel leases for failure to drill or pay rentals; and the proposal of the secured creditors to enforce the mortgage by a sale of the property, and the necessity of enjoining the foreclosure under the present status of the property, etc.

The defect pointed out on demurrer mainly affects the sufficiency of the allegations to warrant what demurrants conceive to be the real relief sought, namely, a sale of the property under a decree to be rendered in the cause. But that defect, if such it be, cannot be considered now and not until such a decree is proposed.

In so far as the allegations are admitted or not expressly denied no proof was required; sec. 36, ch. 125, Code; *Hogan* v. *Piggott*, 60 W. Va. 544; *Thrig* v. *Thrig*, 78 W. Va. 360; and in so far as they are denied sufficiently to put the plaintiff to his proof he has met that burden successfully by depositions promptly taken upon due notice to which the respondents did not appear for any purpose. They do, however, complain of the promptness of the court in appointing the plaintiff as such receiver and refusing their request to postpone the hearing upon the motion to appoint to give them an opportunity to mature their defense, and of his fitness and qualification to administer the trust and of the lack of notice to them of such motion. Apparently there was no such urgency for the immediate hearing as warranted haste in making the appointment or the denial of the proposed postponement for the brief period requested, a few days only. A motion to continue or delay, however, is addressed to the sound discretion of the tribunal before which the motion is made, and unless that discretion is abused the appellate court cannot interfere; and no such abuse is apparent. The bill itself furnished all the notice of the proposed appointment which the respondent could reasonably

hope for or demand, when made in term.  *Wilson* v. *Maddox,* 46 W. Va. 641; *Batson* v. *Findley,* 52 W. Va. 343.

While, generally speaking, there is no fixed rule precluding the appointment of a party to a bill praying for a receiver or of one who has vital interests involved in the suit, the more prudent course is to select some other competent and available person to act in that capacity.  The power so conferred is great and the administration easily made oppressive if not disastrous to the welfare of the persons interested in the property so sequestered.  The main argument addressed to us upon this motion to reverse is that the person named to exercise these drastic powers has produced the necessity for the appointment of a receiver, and that to perpetuate his management of the property is the equivalent of perpetuating a management which impaired its value.  This argument is not entirely devoid of merit.  The authorized capital stock of the Pentress Gas Company, organized in 1914, he sold and received the proceeds as he also did the proceeds of the mortgage bonds, $200,000 less commissions and less $52,000 retained as compensation for the leases he sold to it, approximately $300,000 including the shares purchased and now held by him.  What he did with this amount of money is not disclosed, though doubtless some of it, probably the greater part, was expended in increasing the value of the leases by mining operations on the lands covered by them.  But there is much proof to show his competency and skill as an oil and gas producer for many years and none to show the contrary, wherefore it cannot reasonably be said that he was not qualified for the position, although under the circumstances detailed another person if available might have been more satisfactory to all the parties interested and especially to the defendants who had invested large sums of money upon faith in the solvency of the property and whose interests in it therefore were vital and valuable.

The power so conferred was to control and manage the property, receive the income from it, employ labor, attorneys, engineers and other agents, fix their compensation, reimburse them out of the income; and the decree reserved for further consideration the need to drill additional wells and

the amount of receiver's certificates necessary for this purpose. A subsequent decree, for some reason not now apparent or important, reappointed plaintiff receiver, again conferred the same power, approved the former decree and authorized the issuance and sale of five one thousand dollar receiver's certificates, the proceeds to be applied to the payment of rentals to prevent the leases from lapsing and of other incidental operating expenses, preferred them to the lien of the mortgage indebtedness over the objection and protest of the bondholders and adjudged "that the aggregate of the principal of all receiver's certificates issued under this or any subsequent order in this cause shall not exceed $100,-000 and the court does not now authorize the issuance of any other except the five certificates above mentioned * * * and reserved the question whether any other certificates shall be issued." But the decree does specifically provide "that whether issued under the authority of this or any subsequent order entered in the cause, such certificates shall be without priority as among themselves" and after taxes, costs of the suit and of administration of the trust "shall constitute the first lien upon all the property of the insolvent corporation."

There can be no doubt of the authority and power of a court of equity in a proper case where a real necessity exists therefor to direct the issuance and sale of receiver's certificates and prefer them to prior subsisting liens and encumbrances for the preservation of the property affected from waste, impairment or loss until such time as may be required to put the property into a salable condition to protect, so far as possible, the lienors and shareholders from financial loss and disaster. *Karn* v. *Rorer Iron Co.*, 86 Va. 754; see also *Hulings* v. *Jones*, 63 W. Va. 696, 704. Equity generally declines to authorize the issuance of such certificates to improve, foster or develop a private corporate enterprise and thereby defer prior liens without the consent of creditors whose rights may injuriously be affected. So far as we have been able to discover, no court other than the supreme court of Texas has assumed the right to displace liens against the property of a public service corporation, other than railroads and other public carriers, without the consent of the

mortgagee, except only to the extent of necessary expenditures incident to the administration of the corporate assets, the preservation of the property from deterioration or loss pending the dissolution of the concern, the final adjustment of its business affairs and the settlement of the receivership accounts.

Beyond that point the lower court has not yet gone, it is true, but it has prepared the way for further priority encumbrances. That course, if pursued, eventually may wholly deprive the secured creditors of the benefit of their investment and amount to a confiscation of valuable property rights. In other words, the security may become entirely exhausted by preferential certificates and the mortgage security wholly destroyed.

Speaking of such certificates, that is, certificates preferred to existing valid liens, Judge Woods of the Circuit Court of Appeals, Fourth Circuit, says in *Smith* v. *Shenandoah Valley National Bank of Winchester,* 246 Fed. 379, point one of the syllabus: "Receiver's certificates given for the operation of a business of a private industrial corporation cannot be made to displace prior liens unless the holders of such liens have waived them either expressly or impliedly." The same principle is embodied in the syllabus in *Hanna* v. *State Trust Co.,* 70 Fed. 2, in this language: "A court of chancery cannot against the objection of the first mortgagee, authorize the receiver of a private corporation appointed at the suit of a second mortgagee to borrow money to carry on the corporate business on certificates to be made a first and paramount lien on the corporate property."

The doctrine enunciated by the United States Supreme Court in *Wallace* v. *Loomis,* 97 U. S. 146; *Fosdick* v. *Schall,* 99 U. S. 235, and other later cases of like character, in which receivers of insolvent railroad corporations, in order to enable them to operate the roads, were authorized to issue receivers' certificates which were made a first and paramount lien on the property of the insolvent companies, has no application to this case. It rests upon the public character of railroads and the prime importance to the national welfare of their continued operation. The Supreme Court has not

as yet expressly declared that receiver's certificates cannot be given priority in the case of other corporations to enable the receiver to continue the business, but its intimations have been to that effect. In *Wood* v. *Guarantee Trust etc. Co.*, 128 U. S. 416, the court said: "The doctrine of *Fosdick* v. *Schall* has never yet been applied in any case except that of a railroad. The case lays great emphasis upon the consideration that a railroad is a peculiar property, of a public nature, and discharging a great public work. There is a broad distinction between such a case and that of a purely private concern. We do not undertake to decide the question here, but only point it out." And in *Kneeland* v. *American L. & T. Co.*, 136 U. S. 89, it was said: "It is the exception and not the rule that such priority of liens can be displaced. We emphasize the fact of the sacredness of contract liens, for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable power, has unlimited discretion in this matter of the displacement of vested liens."

The lower federal courts, however, have passed upon the question and are uniform in holding that the receiver of a private corporation has no such latitude in the issuance of receiver's certificates as has a receiver of a railroad corporation. *Farmers' L. & T. Co.* v. *Grape Creek Coal Co.*, 50 Fed. 481; *Hanna* v. *New York State Trust Co.*, *supra;* *Farmers' L. & T. Co.* v. *Burbank Power & Water Co.*, 196 Fed. 539; *Smith* v. *Shenandoah Valley Nat. Bank, supra*.

In the Texas case referred to *supra, Ellis* v. *Vernon Ice, Light and Water Co.*, 86 Tex. 109, a case in which receiver's certificates were issued to carry on the business of a quasi-public concern, a light and water company, under judicial administration through a receivership, and given priority over mortgage liens, the court declined to distinguish between a railroad and other public service corporations, laying down the broad rule that "when a court has taken the control of property from its owners and has placed it in the hands of its receiver, it is its duty so to direct its management as to preserve its value for the benefit of all parties at interest. This may be best accomplished by a continuation of the business, although such continued operation may involve the

danger of some loss. * * * To the exercise of such authority the court should have the right to make the expense chargeable upon the corpus of the property, in the event the income may not prove sufficient to pay the expense.''

Even conceding that the Pentress Gas Company is a public service corporation, though it is engaged only indirectly in selling its product to consumers, and that the necessity for the continued operation of such companies differs only in degree from that of a railroad, yet the rule generally laid down limits such extraordinary power to receiverships of insolvent railroad corporations and should not be extended to the detriment of those who have trusted to the security of their liens, and priority should be accorded only to such certificates as are necessary to preserve the property from waste and destruction.

Certainly, as held in *Lazear* v. *Ohio Valley Steel Foundry Co.*, 65 W. Va. 105, certificates given preference over other older liens, a vendor's lien in that case, with the assent of the lienor expressed or implied will be sustained and enforced. A creditor may waive any right he may have; but can there be a compulsory waiver? If such a thing is possible, it would destroy the marketable value of every industrial security. No one would venture to invest money in an enterprise fraught with such financial danger and ruin. We do not interpret the opinion and syllabus in the Lazear case to mean to favor such a policy as that contemplated by the decree. On the contrary, the opinion in stating the facts essential to the decision used the significant phrase, ''all the creditors acquiescing,'' and point one of the syllabus is: ''Where a person tacitly encourages an act to be done, he cannot afterwards exercise his legal rights in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position so that he will be pecuniarily prejudiced by the assertion of such adversary claim.'' This is but the application of a sound and well established equitable principle.

An attempt is made, an attempt justifiable in the first instance, to show consent by the owners of the mortgage bonds or of their business representatives or some of them to the is-

suance of the first certificates and to their preference over other liens on the property. There was, we think, such a preliminary consent. Depositions and affidavits seem to give credit for that assumption. But if so, that consent was withdrawn before the decree appointing the receiver and authorizing the five certificates was entered, and defendants vigorously protested against the allowance of the certificates for and on behalf of such owners, in person or by their legal advisors. However, as the expenditure of the amount ordered and actually sold enured to the benefit and advantage of the mortgagees in that the expenditure probably saved the undeveloped leases from lapsing, the lien of the certificates should not under such circumstances be impaired or destroyed.

It may be urged that the receiver's certificates should not be accorded priority over other liens upon the property even to the extent of preserving it from waste and destruction. But as was pointed out in *Hulings* v. *Jones*, 63 W. Va. 696, 704 et seq, the property will be held first liable for the receivership expenses which were necessary to preserve it in the status quo, and the same principle is applicable here where priority is accorded in advance to sufficient receiver's certificates to save the property intact. Where money is required, not for the purpose of operating the business, but for the purpose of saving the property from destruction, the authority exists. *International Trust Co.* v. *Decker*, 152 Fed. 78; *International Trust Co.* v. *United Coal Co.* 27 Colo. 246; *Lockport Felt Co.* v. *United Box Co.*, 74 N. J. Eq. 686; *Karn* v. *Rorer Iron Co.*, 86 Va. 754; *Dalliba* v. *Winshell*, 11 Idaho 364; see also *Raht* v. *Attrill*, 106 N. Y. 423, 434-5. But that power ought to be used with the utmost caution and not at all except upon notice to those whose property rights are to be affected and an opportunity to be heard in opposition to that method of relief. *Osborne* v. *Big Stone Gap Colliery Co.*, 96 Va. 58; *Karn* v. *Rorer Iron Co.*, supra.

Equity is so zealous in protecting the rights of lienors that it will not tolerate court administration of private property through a receivership beyond the briefest possible period necessary to put the property into a reasonably marketable

condition.  It will not permit a prolonged sequestration of the property to the probable injury and detriment of mortgagees, such injury and detriment as must necessarily result from the great latitude allowed by the decree in this case, if carried to its fullest extent.  The power granted to encumber by operating expenses and by the drilling of additional wells, except to meet the imperative necessities of the situation, and the appropriation of the income to meet these expenses, and when this is exhausted to displace the liens by receiver's certificates, cannot result otherwise than detrimentally to the rights and interests of the secured creditors, if continued longer than reasonably necessary to obtain a fair market value for the estate of the insolvent corporation. The rights of lienors are paramount to the rights of unsecured creditors and their rights are superior to the rights of stockholders.

But as the lower court has not ordered and may not allow certificates other than the first five, it is not within our power to reverse merely on the ground that the court has indicated a purpose still further to encumber the property and thereby wrongfully imperil the value of the mortgage security.  Perceiving no reversible error, we deny the motion to reverse the decree and affirm it.

*Motion overruled, and decree affirmed.*