STATE *ex rel* C. S. DAVIS, DIRECTOR EMPLOYMENT SECURITY

*v.*

IMAN MINING COMPANY, *Inc., et al,*

and

WILLIAM FOY, *et al,*

*v.*

IMAN MINING COMPANY, *Inc., et al.*

No. 10946

Submitted September 23, 1958.  Decided December 2, 1958.

*Stathers & Cantrall, Mary Frances Brown,* for appellant.

*John C. Southern, Louis D. Meisel,* for appellees.

HAYMOND, PRESIDENT:

On this appeal the defendant Barnes and Brass Elec-

tric Company, a corporation, an execution lien creditor of the defendant Iman Mining Company, Inc., seeks reversal of a final decree of the Circuit Court of Harrison County entered August 30, 1957, in the suit of State of West Virginia by C. S. Davis, Director of Employment Security v. Iman Mining Company, Inc., and numerous other defendants, including the defendant Barnes and Brass Electric Company, a corporation, who are creditors or debtors of the defendant Iman Mining Company, Inc., instituted November 27, 1951; and in the suit of William Foy and numerous other labor lien creditors of Iman Mining Company, Inc., as plaintiffs, against Iman Mining Company, Inc., its special receiver, Indian Coal Company, a corporation, and Bethlehem Steel Corporation, a corporation, instituted July 12, 1952. These suits were consolidated and ordered to be heard together by decree entered August 25, 1952.

By the final decree from which this appeal was granted the circuit court, in determining the respective priorities of receivership costs, operating costs and expenses, and liens and claims against Iman Mining Company, Inc., gave priority to the operating costs and expenses and the certificates of its special receiver over the execution lien of the defendant Barnes and Brass Electric Company. It assigns as error in the final decree this action of the circuit court in fixing the priority of its lien.

By their petition containing cross assignments the plaintiffs William Foy and other labor lien creditors of Iman Mining Company, Inc., who were also defendants in the suit instituted November 27, 1951, assign as error in the final decree the action of the circuit court in determining the amount and in fixing the priority of their labor lien claims.

In the creditor's suit of the State of West Virginia by C. S. Davis, Director of Employment Security, against Iman Mining Company, Inc., and numerous other defendants, including Barnes and Brass Electric Company, a corporation, and the labor lien creditors, on motion of the plaintiff, and after notice to the defendants Iman Min-

ing Company, Inc., and Indian Coal Company, a corporation, by decree entered December 3, 1951, a special receiver for the defendant Iman Mining Company, Inc., was appointed and authorized to hold, preserve, care for, manage and operate its mining plant, equipment, properties and other assets; to collect all its accounts, notes, and other assets; to do and perform all such other acts and things as may be proper and necessary in the preservation of its property and assets and the operation of its coal mining plant until the further order of the court; and to borrow such money as may be necessary upon his certificates or otherwise in such amounts and upon such terms and conditions as to the court should appear to be necessary and proper; and all defendants who were creditors or debtors of the defendant Iman Mining Company, Inc., were enjoined until the further order of the court from instituting any proceeding against it and from doing or causing to be done any act by which its property and assets would be withdrawn from the jurisdiction and control of the court and from paying to it or any person other than the special receiver any money to which it was or might be entitled. The decree also required the special receiver, before operating the property of Iman Mining Company, Inc., or issuing any certificates, to cause its property and assets, consisting entirely of personal property, to be appraised and an inventory to be made and filed.

On December 8, 1951, the special receiver filed an inventory and an appraisement of the property and assets of Iman Mining Company, Inc., and a report which contained certain recommendations. According to the inventory and the appraisement the property and assets, consisting of unused equipment stored near its mine in Barbour County, valued as a going concern at $80,782.13, an account due from Indian Coal Company for coal mined and furnished for October 1951 of $7,430.00, and an account due from Indian Coal Company for coal mined and furnished during November 1951 of $7,300.00, were appraised at $95,512.13, and the total liabilities of Iman Mining Company, Inc., were listed at $68,902.03.

The report of the special receiver recommended that he be authorized to resume the operations of the company which had ceased in October or November, 1951. All the recoverable coal in the area in which it had operated had been removed from the mine and, according to the special receiver, the cost of resuming operations by opening a new mine in other available coal would amount to $21,530.00 and such operations, under existing contracts between Iman Mining Company, Inc., and Indian Coal Company, a corporation, would within two weeks after the opening of a new mine produce a monthly tonnage of from 5,000 to 7,500 and result in a net profit of approximately forty five cents per ton. He recommended that he be authorized to borrow on certificates or otherwise the sum of $15,000.00 which together with the money he was authorized to collect from Indian Coal Company would enable him to obtain the capital necessary to resume and continue the mining operations of the company.

On December 10, 1951, the defendant Barnes and Brass Electric Company on whose judgment, dated October 20, 1951, for $6,703.00 with interest and costs against Iman Mining Company, Inc., executions were issued and delivered to the sheriffs of Barbour and Harrison County and recorded in the office of the clerk of the county court of each of those counties on November 1, 1951, filed its answer to the bill of complaint and objected to the issuance of certificates by the special receiver for the purpose of operating the plant of Iman Mining Company, Inc., and also objected to any preference to any creditor for the purpose of resuming such operation.

The answer to the bill of complaint contains allegations, among others, that to continue the mining operation it would be necessary to make a new opening and in effect to start a new mine; that instead of the cost of $3,110.00 of a new opening, as estimated by the special receiver, the cost would amount to at least $10,000.00; that the maximum capacity of the new mine could not be reached in the production of coal for a period of at

least two or three months after the start of operations; that the Redstone seam of coal available for mining was subject to faults and, until after sufficient development, it could not be determined whether it existed at the proposed location in sufficient quantity to be productive; that to determine that fact would require the expenditure of from $20,000.00 to $30,000.00; that the operations of the company in the past had not been profitable; that at the rate of thirty five cents per ton it would be necessary to mine 200,000 tons to pay the principal of the indebtedness of the company; that at the rate of production reached by the company in 1951 it would require from three to four years to produce sufficient tonnage to satisfy its indebtedness and the costs of operation; that if the assets of Iman Mining Company, Inc., were promptly liquidated all creditors would likely be paid in full; that they were entitled to have the assets liquidated and their claims paid; and that the proposed operating receivership was an attempt to gamble with the assets of the company. The answer, to which no replication was filed, also specifically denied the right of the special receiver to issue certificates for operating purposes and to give them priority over the rights of secured creditors.

By decree entered December 11, 1951, the recommendations of the special receiver were adopted, the objections of the defendant Barnes and Brass Electric Company were overruled, and the special receiver was authorized to issue certificates to the amount of $15,000.00. The decree also provided that "The special receiver's certificates, the issuance of which is hereby authorized, shall be a first lien upon the assets, physical properties and proceeds of the mining operation of Iman Mining Company, Inc. carried on by said special receiver after the court costs, cost of administration, receiver's compensation, taxes and the current operating expenses of the mining operation are paid, subject to any specific lien or liens which may have been or may be perfected by the United States of America and which such liens may have or be declared to have at a future time a first

priority: and further subject to the rights of sellers under conditional sale contracts for such respective items of personal property purchased thereunder by Iman Mining Company, Inc., and now in the possession of the Special Receiver; the sum of money obtained by the sale of said special receiver's certificates shall be used and expended by the special receiver to preserve and protect the physical properties and assets of said Iman Mining Company, Inc. for the benefit of its creditors and to continue in operation the mining of coal from the properties of Iman Mining Company, Inc., as may be deemed advisable by the special receiver."

Under the decree of December 11, 1951, the special receiver undertook to open a new mine and to uncover coal in the vicinity of the new opening, employed a superintendent at a salary of $500.00 per month, and during the period from December 11, 1951 to February 12, 1952, when his operations ceased, the special receiver incurred expenses amounting to several thousand dollars. He also employed a watchman from May 16, 1952 to March 31, 1954 at a cost of approximately $3,000.00, and incurred insurance premiums of approximately $3,200.00 and attorneys' fees of $4,200.00. By decree entered April 5, 1952, the special receiver was directed to terminate the services of the superintendent and other employees in the operation of the mine. On August 2, 1952 the special receiver requested authority to employ a night watchman to protect the equipment which remained at the site of the mine. The special receiver, having ceased his efforts to operate the mine, petitioned the court on November 12, 1953, for authority to advertise and sell the property and on November 21, 1953, a decree of sale was entered. The property was sold on March 5, 1954, for the net sum of $41,550.35 and the sale was confirmed by decree entered March 8, 1954.

During the period between the entry of the decree of December 11, 1951 and the decree of sale of November 21, 1953, the defendant Barnes and Brass Electric Company, the only objecting creditor, continued to object to

the operation of the property by the special receiver. By decree entered December 19, 1952, the court overruled its petition and motion to fix and determine the costs and expenses of the receivership and to decree an immediate sale of the assets of Iman Mining Company, Inc. On March 10, 1953, it renewed its motion for determination of the costs and expenses of the receivership and a prompt sale of the assets. The motion was continued and not determined before the entry of the decree of sale of November 21, 1953. On April 12, 1954, the defendant Barnes and Brass Electric Company filed its written objections to a decree proposed by counsel for the special receiver to give priority to the expenses incurred in the mining operations of the special receiver over its lien, and moved the court that the expenses of the special receiver chargeable to the operation of the property be fixed and determined, that the priority of its lien should not be made subject to such expenses, and that such expenses should be held to be the risk of the plaintiff and the other creditors who joined or acquiesced in the operations of the special receiver. This motion was not acted upon by the court until it was overruled by the final decree of August 30, 1957.

By decree entered April 19, 1954, the case was submitted for decision upon two reports of the commissioner in chancery completed pursuant to prior decrees of reference and upon a report of the special receiver from which it appears that he had issued six of the certificates authorized by the decree of December 11, 1951.

By final decree entered August 30, 1957, after certain exceptions to the reports of the commissioner in chancery were sustained, the priorities of the liens were fixed and determined. The court costs and all receivership costs, including allowances to the special receiver and his counsel and the certificates issued by the special receiver in the operation of the property of the defendant Iman Mining Company, Inc., were made a charge first in order of priority on all its assets over all other liens and claims. The decree then fixed the priority of these liens in this

order: The five claims of the sellers of equipment under conditional sales contracts aggregating $2,133.15; the lien of the United States of America in the sum of $6,225.24; the lien of the plaintiff, the State of West Virginia, for unemployment compensation taxes, in the amount of $7,279.43; the lien of General Equipment Company, a corporation, under executions, in the amount of $1,870.32; the liens for work and labor by employees of Iman Mining Company, Inc., performed during a period of four days from October 29, 1951, to November 1, 1951, inclusive, and vacation pay for one month, in equal priority, in the aggregate of $3,038.87; and the lien of the defendant Barnes and Brass Electric Company under its executions issued and delivered to the sheriff of Harrison County on November 1, 1951, in the amount of $9,225.43.

The decree also directed the special receiver to pay from the sum of $14,392.41 in his custody the receivership costs and expenses, the claim of the sellers of equipment under conditional sales contracts, and the tax lien of the United States of America, and to pay the remaining sum of $3,573.67 to the clerk of the circuit court and also directed the clerk to pay that amount and the sums of $7,865.79 and $282.50 then in his possession, aggregating $11,721.96, constituting the entire assets of the defendant Iman Mining Company, Inc., upon the unpaid liens according to the priorities determined beginning with the lien of the plaintiff, the State of West Virginia, in the amount of $7,279.43, and including the liens of the labor creditors pro rata in the event the available assets were insufficient to pay them in full. The assets being insufficient to pay the lien of the defendant Barnes and Brass Electric Company, upon its application this appeal was granted by this Court on December 16, 1957.

The principle is well established that though a court of equity has the power to authorize and direct issuance and sale of certificates of a receiver and prefer them to prior subsisting liens for the preservation of the property affected from waste, impairment or loss until such

time as may be required to put the property in salable condition, certificates of a receiver, authorized for the operation, improvement or development of a business, other than a railroad or other utility of paramount public importance, can not lawfully displace prior liens unless the holders of such liens expressly or impliedly waive them. *McDermott* v. *Pentress Gas Company*, 82 W. Va. 230, 95 S. E. 841. In that case this court held in point 5 of the syllabus that the certificates of a receiver, authorized for the operation, improvement or development of a business, other than a railroad or other utility of paramount public importance, can not lawfully displace prior liens unless the holders of such liens waive them either expressly or impliedly. In the opinion it said: "Equity generally declines to authorize the issuance of such certificates to improve, foster or develop a private corporate enterprise and thereby defer prior liens without the consent of creditors whose rights may injuriously be affected." In *Lazear* v. *Ohio Valley Steel Foundry Company*, 65 W. Va. 105, 63 S. E. 772, in which holders of existing liens consented to the prior lien of certificates of a special receiver, this court also said that a court of equity is powerless to displace a prior existing lien without the consent of the lienor.

In *Baltimore Building and Loan Association* v. *Alderson*, C.C.A., Fourth Circuit, 90 F. 142, 32 C.C.A. 542, the Court used this language: "In the case of private corporations the court cannot authorize the issue of receiver's certificates for the purpose of improving, adding to, or carrying on the business of the company, without first having the consent of creditors whose liens would be affected thereby. *Farmers' Loan & Trust Co.* v. *Grape Creek Coal Co.*, 50 Fed. 481. In *Raht* v. *Attrill*, 106 N. Y. 423, 13 N. E. 282, the precise question which is now under discussion came up and was decided. An hotel company mortgaged its property to raise funds to build an hotel. Before completion, the corporation became insolvent, and upon the application of its principal stockholders a receiver was appointed; and upon an application and showing that the wages of the men who worked

on the hotel building were unpaid, and they threatened, unless paid, to burn the building, the court made an order authorizing the receiver to issue certificates, which were declared to be a lien prior to the first mortgage, to raise funds to pay the wages of the laborers. After an exhaustive discussion, the court held that these certificates, issued without the consent of the prior lienholders, did not displace their lien."

In *Smith* v. *Shenandoah Valley National Bank of Winchester,* C.C.A., Fourth Circuit, 246 F. 379, 158 C.C.A. 443, the court held that certificates of a receiver given for the operation of the business of a private industrial corporation can not be made to displace prior liens, unless the holders of such liens waive them, either expressly or impliedly, and in the opinion used this language: "The rule is that receiver's certificates given for the operation of the business of a private corporation cannot be made to displace prior liens, unless the holders of such liens have waived them, either expressly or impliedly. The necessity for the continued operation of a railroad induced the Supreme Court of the United States to hold that a court of chancery having charge of railroad property might authorize the issuance of receiver's certificates for operating expenses, which would be a lien prior to the mortgage bonds. *Wallace* v. *Loomis,* 97 U. S. 146-162, 24 L. Ed. 895; *Fosdick* v. *Schall,* 99 U. S. 285, 25 L. Ed. 339. Though not deciding the point, the court indicates in *Wood* v. *Guarantee Trust Co.,* 128 U. S. 416, 9 Sup. Ct. 131, 32 L. Ed. 472, that such a power is not to be extended to receiverships of industrial corporations."

In the leading case of *Hanna* v. *State Trust Company,* C.C.A. Eighth Circuit, 70 F. 2, 16 C.C.A. 586, 30 L.R.A. 201, the court held that though certificates of a receiver might be issued to pay taxes, the court could not, against the objection of first mortgagees, displace their liens by the issuance of certificates to carry on the business of an insolvent private corporation, and in the opinion said: "The representation is always made, in such cases, that the receiver can carry on the business much more suc-

cessfully than was done by the insolvent corporation. This commonly proves to be an error. *Raht* v. *Attrill*, 106 N. Y. 430, 13 N. E. 282. But, if it were true, it would afford no ground of equitable jurisdiction, for it is not a function of a court of equity to carry on the business of private corporations, whether solvent or insolvent."

In 75 C.J.S., Receivers, Section 211c, the text contains this statement: "Certificates constituting a paramount lien on the corpus cannot be issued in displacement of existing liens merely to continue the business of a private concern, without consent of prior lienholders, or waiver or estoppel, unless continuance of the business is essential to preservation of the property."

With respect to costs and expenses incurred by a special receiver in the operation of the business of an insolvent private corporation the general rule recognized by the great weight of authority is that in administering the affairs of an ordinary insolvent private business corporation for which a receiver has been appointed, a court of equity can not authorize the receiver to incur indebtedness to carry on the business and make such indebtedness a first and paramount lien upon the corpus of the property superior to the liens of prior lienholders without their consent. 75 C.J.S., Receivers, Section 292bb, 45 Am. Jur., Receivers, Section 229; Annotations II, page 991 and III, page 996, 104 A.L.R.; *National Surety Corporation* v. *Sharpe*, 236 N. C. 35, 72 S. E. 2d 109; *Nicholson* v. *Western Loan and Building Company*, C.C.A., Ninth Circuit, 60 F. 2d 516, certiorari denied, 288 U. S. 605, 53 S. Ct. 396, 77 L. Ed. 980; *Supreme Fuel Sales Company* v. *Peerless Plush Manufacturing Company*, 117 N. J. Eq. 259, 175 A. 358; *Raht* v. *Attrill*, 106 N. Y. 423, 13 N. E. 282, 60 Am. Rep. 456; *Sinopoulo* v. *Portman*, 192 Okla. 558, 137 P. 2d 943; *Stacey* v. *McNicholas*, 76 Ore. 167, 144 P. 96, 148 P. 67; *Tennant* v. *Dunn*, 130 Texas 285, 110 S. W. 2d 53.

In *McDermott* v. *Pentress Gas Company*, 82 W. Va. 230, 95 S. E. 841, the opinion contains this statement:

"Equity is so zealous in protecting the rights of lienors that it will not tolerate court administration of private property through a receivership beyond the briefest possible period necessary to put the property into a reasonably marketable condition." In *Moran* v. *Leccony Smokeless Coal Company,* 124 W. Va. 54, 18 S. E. 2d 808, this court said: "Costs and expenses of receivership are generally limited to taxes and those costs and expenses necessary to preserve the estate for the benefit of all persons interested, and are payable, primarily, out of the fund in the hands of the receiver, but, if necessary, out of the corpus of the estate in the custody of the court. The prestige and dignity of the court is involved in seeing that expenses incurred under its direction are paid; otherwise it would be loathe to take charge of property under a receivership in any case. But this does not mean that the court can operate the property through a receiver, and through such operations encroach upon the rights of creditors, especially lienholders, by charging the expenses of such operations to the corpus of the estate by which such liens are secured."

It is clear from the record that the defendant Barnes and Brass Electric Company repeatedly objected, in good faith, at various stages of the proceedings in these consolidated cases, to the operation of the property of the defendant Iman Mining Company, Inc., by the special receiver and to the decree of December 11, 1951, which authorized the special receiver to issue certificates in the amount of $15,000.00 and made the certificates a first lien upon the assets, physical properties and proceeds of the mining operation of the defendant Iman Mining Company, Inc., by the special receiver after the payment of court costs, cost of administration, compensation of the receiver, taxes, and the current expenses of operating its property subject only to any specific lien or liens which may have been or may be perfected by the United States of America and which may have or be declared to have first priority, and to the rights of sellers under conditional sales contracts for such items of personal prop-

erty purchased by the defendant Iman Mining Company, Inc., as were in the possession of the special receiver. By so objecting it did not waive its right to the priority of its lien over the lien of the costs and expenses, or of the certificates of the special receiver, in connection with the operation of the property and it did not consent, either expressly or impliedly, that such operating costs and expenses should be given priority or preference over its lien. The decree of December 11, 1951, giving priority to the costs and expenses and the certificates of the special receiver in connection with the operation of the property was not an appealable decree and the only course available to the defendant Barnes and Brass Electric Company, until the entry of the final decree of August 30, 1957, was to insist, as it did, upon its objection to the foregoing provisions of the interlocutory decree of December 11, 1951, and, after the entry of the final decree to take an appeal from it to this Court.

An appeal from an appealable decree of a circuit court, which has been taken within the period provided by law, will bring to this Court for review every former decree or order which is not appealable regardless of the time of its rendition and also every appealable decree rendered before the expiration of the time within which an appeal may be taken. *Stout* v. *Philippi Manufacturing and Mercantile Company*, 41 W. Va. 339, 23 S. E. 571, 57 Am. St. Rep. 843; *Harper* v. *South Penn Oil Company*, 77 W. Va. 294, 87 S. E. 483; *Kelner* v. *Cowden, Adm'r*, 60 W. Va. 600, 55 S. E. 649; *Lloyd* v. *Kyle*, 26 W. Va. 534; *Steenrod's Adm'r.* v. *Wheeling, Pittsburgh and Baltimore Railroad Company*, 25 W. Va. 133; *Camden* v. *Haymond*, 9 W. Va. 680. In *Lloyd* v. *Kyle*, 26 W. Va. 534, this Court held in point 2 of the syllabus that "Where an appeal is properly obtained from an appealable decree either final or interlocutory, such appeal will bring with it for review all preceding non-appealable decrees or orders, from which have arisen any of the errors complained of in the decree appealed from, no matter how long they may have been rendered before the appeal was

taken." As the decree of December 11, 1951, is not an appealable decree, that decree and the final decree of August 30, 1957, are subject to review upon this appeal.

Under the authorities cited and quoted from in this opinion the decree of December 11, 1951 and the final decree of August 30, 1957 are erroneous insofar as they give priority to the costs and expenses of the operation of the mining plant of the defendant Iman Mining Company, Inc., and the certificates of the special receiver for such costs and expenses, over the lien of the defendant Barnes and Brass Electric Company, make such costs and expenses a charge first in priority on all the assets of that company, and deny the motion of the defendant Barnes and Brass Electric Company to fix and determine such costs and expenses.

In support of their cross assignments, William Foy and other labor lien creditors of the defendant Iman Mining Company, Inc., contend first, that the circuit court erred in limiting the priority of their claims, over the lien of the defendant Barnes and Brass Electric Company, to the period of four days, from October 29, 1951, when they commenced their work for the company, to November 1, 1951, when the executions on the judgment of the defendant Barnes and Brass Electric Company were delivered to the sheriffs of Barbour and Harrison Counties and recorded in the office of the clerk of the county court of each of those counties, instead of giving such priority to their claims for a period of one month from the date of the commencement of their employment on October 29, 1951; and second, that the circuit court erred in giving priority, over their claims, to the lien of the State of West Virginia for unemployment compensation taxes and to the lien of General Equipment Company under executions delivered to the sheriffs of Barbour and Harrison Counties on October 23, 1951 and October 22, 1951, respectively, and recorded in the office of the clerk of the county court of each of those counties on October 26, 1951, and October 30, 1951, respectively.

The statute upon which they rely to sustain their first

contention, Section 31, Article 2, Chapter 77, Acts of the Legislature, 1939, Regular Session, Serial Section 3752, Section 31, Article 2, Chapter 38, Michie's Code, 1955, Annotated, provides that "Every workman, laborer or other person who shall do or perform any work or labor, for an incorporated company doing business in this state, by virtue of a contract either directly with such incorporated company or with its general contractor, or with any sub-contractor, shall have a lien for the value of such work or labor upon all real estate and personal property of such company; and, to the extent and value of one month's such work or labor, said lien shall have priority over any lien created by deed or otherwise on such real estate or personal property subsequent to the time when such work or labor was performed: * * *."

The statute creating the lien gives it priority for work or labor for a maximum period of one month over such other liens only as are created subsequent to the time such work and labor have been performed. Under the express provision of the statute the work or labor must be performed, not commenced as contended by counsel for the labor lien creditors, before a subsequent lien is created, to entitle the lien for work or labor to priority over such subsequent lien. As the only work or labor performed by the labor lien creditors before the lien of the defendant Barnes and Brass Electric Company was created on November 1, 1951, was performed during the four day period from October 29, 1951 to November 1, 1951, the priority of their liens over the lien of the defendant Barnes and Brass Electric Company was limited, by the statute, to the period of four days and to vacation pay which had accrued prior to October 29, 1951; and the priority accorded their liens by the final decree and which covered and applied to those items was correct and proper.

The second contention of the labor lien creditors is based upon Section 18, Article 5, Chapter 130, Acts of the Legislature, 1945, Regular Session, Serial Section 2366(73), Section 18, Article 5, Chapter 21A, Michie's

Code, 1955, Annotated. That section in part provides that "In the event of any distribution of an employer's assets pursuant to an order of the court under a law of this state, payments then or thereafter due and interest allowable thereon shall be paid in full prior to all other claims except taxes and claims for wages. Wage claims in excess of two hundred and fifty dollars per claimant or earned more than six months before the commencement of the proceeding, shall not be entitled to priority." The lien of General Equipment Company, by virtue of its execution delivered to the sheriff on October 23, 1951 and recorded in the office of the clerk of the county court of Barbour County October 26, 1951, was created before any work or labor was commenced or performed for the defendant Iman Mining Company, Inc., by the labor lien creditors, and at that time payments for such work or labor were not then or thereafter due and the lien of General Equipment Company acquired priority over any lien for work or labor subsequently performed by the labor lien creditors. The quoted statutory provision in express terms requires the payments then and thereafter due with interest to be made in full prior to all other claims except taxes and wages but it does not create a lien for taxes or wages or operate to change or displace the priority of valid subsisting liens, the priorities of which are fixed and determined by other applicable statutory provisions or as otherwise provided by law. The lien of General Equipment Company was entitled to priority over the liens for work and labor and the lien of the State of West Virginia was entitled to priority over the lien of the General Equipment Company. Both of these liens were entitled to priority over the lien of the defendant Barnes and Brass Electric Company and that lien was entitled to priority over the liens for all work or labor performed by the claimants of such liens subsequent to November 1, 1951. In that situation recognition must be given to the relative priorities of the foregoing liens and the priorities of those liens are not altered or displaced by the provisions of Section 18, Article 5, Chapter 130, Acts of the Legislature, 1945, Regular

Session. The priorities of the liens of the State of West Virginia for taxes, of General Equipment Company, of the defendant Barnes and Brass Electric Company, and of the labor lien creditors for work and labor for four days and vacation pay which had accrued prior to October 29, 1951, were fixed and determined by applicable statutory provisions or as otherwise provided by law; and the order of priority as set forth in the final decree is correct and proper, except to the extent that it erroneously gives priority to the operating costs and expenses of the special receiver over the lien of the defendant Barnes and Brass Electric Company.

To the extent that the final decree and the decree of December 11, 1951, give priority to the costs and expenses of the special receiver, including the certificates issued by him, due to or arising from his operation of the property of the defendant Iman Mining Company, Inc., as a charge on all its assets over the lien of the defendant Barnes and Brass Electric Company, those decrees are reversed and set aside but in all other respects the final decree of August 30, 1957, is affirmed; and this cause is remanded to the circuit court with directions that it forthwith determine the amount of the costs and expenses chargeable to the operation of the property by the special receiver, give the lien of the defendant Barnes and Brass Electric Company priority over all such costs and expenses, and require the payment of the amount of such costs and expenses to that defendant as a credit to that extent upon its lien.

*Affirmed in part,*
*reversed in part, and*
*remanded with directions.*