# CHARLESTON.

## CHARTIERS OIL COMPANY v. MOORE'S DEVISEES.

Submitted September 9, 1904—Decided December 20, 1904

1. PARTIES—*Decree Reversed for Want of—Day in Court.*
   When it is made to appear that the rights of persons who are necessary parties, have been adjudicated in a cause, who are

not made parties to the suit, the decree will be reversed and the cause remanded that such parties may be brought in.   (p. 545).

2.   INTERPLEADER.—*Practice,—Affidavit Required to Interpleader.*

To a bill of interpleader there must be annexed by the plaintiff, an affidavit that there is no collusion between him and any of the parties.   (p. 545).

3.   INTERPLEADER.—*Prayer of Bill.*

A bill of interpleader should pray that the several claimants be compelled to interplead and state their several claims, so that the court may adjudge to whom the same debt, duty, or other thing belongs.   (p. 544).

Appeal from Circuit Court, Monongalia County.

Bill by the Chartiers Oil Company against John Moore's devisees.   Decree for plaintiff, and Simon L. Moore and others appeal.

*Reversed.*

W. E. GLASSCOOK, for appellants.

COX & BAKER, for appellee.

McWHORTER, JUDGE:

John Moore was the owner of a tract of three hundred and twelve acres of land in Clay District, Monongalia county.   On the 16th day of December, 1892 he made an oil and gas lease thereon to D. J. Sterling, which was in the usual form of such leases, to run ten years and as much longer as oil and gas should be found in paying quantities.   On the 29th day of August, 1893, the said Sterling assigned said lease to the Chartiers Oil Company.   On the —— day of ———, 1895, John Moore departed this life, having first made a will devising said land to his children, to Daniel V. Moore and Abraham Moore, two specific parcels thereof.   On August 25, 1900, a suit was brought in the circuit court of Monongalia county by a part of the devisees of John Moore against the other part of such devisees, for partition of the said three hundred and twelve acres; that the same was partitioned among them, lot No. 1 being assigned to the heirs of Linsey C. Moore; lot No. 2, to Amanda Core; lot No. 3, to John I. Moore's heirs; lot No. 4, to Sarah Moore; and lot No. 5 to Prudence Shriver's heirs, all of which lots and parcels were described by plat and report of the com-

missioners making partition of that portion of three hundred and twelve acres which was not devised by John Moore specifically to his sons, Daniel V. Moore and Abraham Moore, which devise to said two sons was in the following language: "I give and bequeath unto my sons, Daniel V. and Abraham Moore, the Alpheus Sine's tract of land, calling for forty-five acres, and also the land that I bought of Thomas and Clinton Davis." In the partition there was no mention made of the oil and gas lease which was still in full force. The lessee and his assignee, the Chartiers Oil Company, having paid all the rental required by said lease, up to the 21st day of June, 1901, when the said Oil Company commenced to drill a well which was completed as a gas well, producing gas in paying quantities, on the 3rd day of September, 1901; that said well was located on that part of the three hundred and twelve acres assigned in the partition to the heirs of Prudence Shriver, who claimed the $200.00 royalty money which was due to be paid on the completion of the well. The other devisees of said John Moore also claimed that they were entitled to their fair proportion of said royalty money. The Chartiers Oil Company filed its bill in the circuit court of Monongalia county against the devisees of John Moore, to whom were set apart and assigned in the partition, lots Nos. 1, 2, 3, 4 and 5, which bill was in the nature of an interpleader, and brought into court and paid to the clerk thereof the $200.00 then due under said lease for the year beginning September 3rd, 1901, taking and filing the receipt of the clerk for the said sum, and praying that the court should decree to whom the plaintiff should pay any after payments of money royalties on account of the gas well or any other well drilled on the three hundred and twelve-acre tract of land, as well as the like disposition of the royalty in oil, if it should be produced, and that the conflicting claims and interests for said royalty oil and money royalties be determined and adjudicated, and plaintiff be permitted to pay the same as the same might or should become due under the provision of said lease; that the said plaintiff might be fully protected in said payment and delivery of royalties, and for general relief. The bill was taken for confessed as to the adult defendants, and the infant defendants, by their guardian *ad litem,* filed their answer. On the 20th of June, 1902, the cause was heard upon the bill of complaint and exhibits, upon process duly executed upon or accepted for all the adult defendants, and

the bill taken for confessed as to them, the answer of the infant defendants, by their guardian *ad litem,* and general replication thereto, when it was adjudged, ordered and decreed that the clerk pay and apply said $200.00 as follows: "He shall first pay the costs of this suit, and the residue he shall pay to the heirs of Prudence Shriver, the defendants Presly Shriver, John Shriver, and Rebecca McCord, or their counsel of record," and further decreed that the said heirs of Prudence Shriver take and receive and hold as their own property, all sums required to be paid on account of gas by said lease for the gas from the well now on, or the wells hereafter drilled under said lease, on that part of the said three hundred and twelve-acre tract of land which was assigned to them in said partition, and that they take the royalty in oil under said lease from all wells drilled or thereafter to be drilled on lot No. 5, and that the several owners of the four other several lots, do receive, take and hold as their own property or moneys to be paid on account of gas and the royalty in oil to be delivered from all wells under said lease thereafter drilled on their respective lots of said three hundred and twelve-acre tract of land, and that Daniel V. Moore and Abraham Moore do receive, take and hold as their own property or moneys to be paid on account of gas and the oil royalties to be delivered from all wells under said lease thereafter drilled on the part of the three hundred and twelve acres described as the Alpheus Sine's tract of land, calling for forty-five acres, and also the land bought by John Moore from Clinton Martin and Thomas Martin, which land was devised to them by the last will. and testament of John Moore. From this decree, the devisees of John Moore, except the heirs of Prudence Shriver and Abraham Moore, appealed to this Court, and assigned as error that the bill filed in the cause being a bill of interpleader has not annexed thereto an affidavit that there is no collusion between plaintiff and any of the parties to this cause as is required to be done under the laws of this State; 2nd, because the court erred in decreeing that the heirs of Prudence Shriver should take, receive, and hold as their own property, all sums to be paid on account of gas by the lease executed by John Moore in his life time, and from the wells thereafter to be drilled under said lease on that part of the three hundred and twelve acres designated as lot No. 5, as well as the royalty on oil to be produced

from said lot, and in not decreeing that the gas and oil lease having been made in the life time of John Moore, reserving the money royalty, if gas should be found and marketed, and the oil royalty, which being a sale of the oil and gas, the royalties reserved in money and in kind were purchase money and especially was the money royalty reserved on account of gas, purchase money and being reserved by the lessor in his life time upon the sale of the oil and gas, the same then being real estate; that the purchase money should pass to the representative of John Moore, deceased, and be divided among his heirs and devisees as personal property, and because the decree adjudicated the rights and interests of Daniel V. Moore and Abraham Moore, two of the legatees and devisees of the said John Moore, in and under said lease without having made them parties to the suit. In 2 Daniels Ch. Pl. and Pr. 1562, it is said: "As to the sole ground on which the jurisdiction of the court, in this case, is supported, is the danger of injury to the plaintiff from the doubtful title of the defendants, the court will not permit the proceeding to be used collusively to give advantage to either party; therefore, with a bill of interpleader the plaintiff must file an affidavit that there is no collusion between him and any of the parties. The bill is demurrable, if the affidavit is not annexed, or, at least, filed with it. The affidavit may be sworn before the bill is actually filed. Where there are several plaintiffs they must all join in the affidavit, or the affidavit must show satisfactorily why the other plaintiffs do not join," and cases there cited. Also in Story's Equity Pl. (10th Ed.), sec. 291: "As every such bill is founded upon the admitted want of interest in the plaintiff, and is at the same time, susceptible of being used collusively to give an undue advantage to one of the contending parties, two things are required as precautions to prevent any abuse of the proceeding. In the first place, the plaintiff must annex an affidavit, that there is no collusion between him and any of the parties; in the next place, if there is any money due, he must bring it into court, or at least offer to do so by his bill. If he does not do so, it is in strictness a good ground of demurrer." In *Dickeschied* v. *Bank,* 28 W. Va. 340, at page 345, speaking of bills in interpleader, the Court says: "The prayer of the bill of interpleader should also be correctly framed by praying that the defendants may set forth their titles and may interplead and settle and adjust their demands between them-

selves. * * * To such bills an affidavit is always required of the plaintiff that he does not collude with either of the defendants." In case at bar there is neither affidavit annexed to the bill nor filed with it, which affidavit is held to be essential. It does not appear from the record that Daniel V. Moore and Abraham Moore were made parties to the bill, while it appears from the record that they are devisees of parts of the three hundred and twelve acres, and are necessary parties to the suit. In *Gallatin L. C. & O. Co.* v. *Davis,* 44 W. Va. 109, (Syl. pt. 3), it is held: "It is immaterial in what manner it is brought to the attention of this Court, that the decree complained of was rendered in the absence of proper parties, the case will be reversed and remanded in order that proper parties may be made." As to the rights of the defendants respectively, the court having adjudicated such rights in the absence of necessary parties, the decree must be reversed and the cause remanded for proper parties to be made thereto, and for further proceedings to be had therein.

*Reversed.*