THE TOWN OF SUMMERSVILLE *ex rel.* ARNOLD McCUE *v.* C. J. COOPER *et al.*

(Nos. 9269 - 9270)

Submitted April 28, 1942.   Decided June 2, 1942.

418

Lovins, Judge, dissenting.

*A. N. Breckenridge* and *Phyllis Hart,* for plaintiffs in error Ray Lambert and Arnold McCue.

*Roland A. Clapperton,* for defendant in error O. M. Craig.

Rose, Judge:

Ray Lambert and Arnold McCue were awarded separate writs of error to an order of the Circuit Court of Nicholas County made in a statutory "interpleader" proceeding involving the amount due on a judgment obtained in that court by McCue against C. J. Cooper and the National Surety Corporation.

C. J. Cooper was sergeant of the Town of Summersville, and the National Surety Corporation was the surety on his official bond in the amount of $3500.00. McCue instituted an action of debt on the bond against Cooper

and the surety company for $3500.00 charging that Cooper had arrested and incarcerated him in jail for several days without a warrant and without preferring against him any charge, and that, upon another occasion, had sworn out a warrant against him upon a certain charge of which he was convicted before a justice, but on appeal to the circuit court of the county, was discharged. Upon trial of this action, the jury returned a verdict on September 2, 1940, in favor of McCue for $1,000.00 upon which judgment was entered September 5th.

On the day the verdict was returned at ten o'clock, but whether before or after the verdict, does not appear, O. M. Craig sued out a writ of *fieri facias* on a judgment of $4,353.54 rendered in 1934 in his favor against McCue. This writ was delivered to the sheriff of Nicholas County, and on the same day returned *nulla bona*. A copy of this execution was docketed in the office of the clerk of the County Court of Nicholas County on the 6th day of September. On September 3rd, Craig caused a suggestion order to be issued on his judgment, making Cooper and the surety company suggestees. Also, on September 3rd, McCue, by instrument in writing of that date, for a "consideration of $1.00 cash in hand paid and other considerations valid in law", assigned to Ray Lambert all his "right, title and interest in and to all proceeds arising or which may arise, growing out of the pending suit", against Cooper and the National Surety Corporation. An "affidavit in the nature of an interpleader" on behalf of Cooper and the surety company made by J. M. Wolverton, one of their counsel of record, and verified by affidavit on the 30th day of September, 1940, was filed in court, setting up the order of suggestion, the assignment to Lambert, and the claim of A. N. Breckenridge against the McCue judgment for his services as McCue's attorney in the action; and tendering for payment to the general receiver of the court the amount of the judgment, with interest and costs, and praying that the conflicting claimants thereto be required to interplead and set up their claims. This affidavit was duly filed, the money paid to the general receiver, and, apparently, without

objection, fifty per cent of the judgment was directed to be paid and was paid by the receiver to Breckenridge as his attorney's fee in the case. At the same time, an order was issued requiring Craig and Lambert to "appear forthwith and state the nature of their respective claims, and maintain or relinquish the same."

Lambert appeared and filed a "demurrer" and answer in the proceeding. The demurrer asserted that the affidavit was insufficient, and did not comply with the statute and other requirements of law. Under this, it is pointed out that the affidavit does not include a statement that the defendants "do not collude"; and it is argued that Cooper and the surety company did not occupy a position from which they could maintain this statutory proceeding. Craig answered, setting up his claim by virtue of the execution, and that the pretended assignment was an unlawful preference and made without consideration and with intent to hinder, delay and defraud creditors of McCue, while the latter was insolvent.

The "demurrer" was overruled, trial by jury was waived, and evidence taken before the court, but not preserved, except as it is summarized in the judgment order of the court.

Upon these pleadings, the evidence so taken and argument of counsel, the court announced its decision that the assignment to Lambert was invalid and directed the receiver to pay the residue of the fund in his hands to Craig. At that time and before the entering of the order embodying the court's decision, McCue prepared in writing, verified by affidavit, his claim for a statutory exemption of $200.00 of this amount, and served one copy thereof on the general receiver of the court, another on the sheriff, who had formerly held the writ of *fieri facias* and order of suggestion, and the third he filed with his petition in the interpleader proceeding. To this petition, O. M. Craig filed a demurrer, which was sustained.

These writs of error were then awarded to Lambert and McCue, respectively.

The "demurrer" of Lambert (which may be treated as

a motion to quash) to the affidavit of interpleader was based on two grounds. The affidavit is said to be insufficient because it does not state that the defendants do not collude with the third party. claimant. The statute under which this proceeding is instituted is found in Code, 56-10-1, and reads as follows:

"A defendant in an action brought against him for the recovery of money which he does not wish to defend, but which money is claimed by some third person, or for the recovery of the possession of personal property to which he makes no claim, but which is claimed by a third person, may file his affidavit stating the facts in relation thereto, and that he does not collude with such third person but is ready to pay the money claimed, or deliver the property, to the owner thereof, as the court may direct, and the court may thereupon make an order requiring such third person to appear and state the nature of his claim, and maintain or relinquish the same, and may in the meantime stay the proceedings in such action."

It will be observed that the statute prescribes mandatorily that the affidavit must state that the defendant "does not collude with such third persons." This requirement of the statute corresponds precisely to the universal rule in bills of interpleader. *Chartiers Oil Company* v. *Moore's Devisees,* 56 W. Va. 540, 49 S. E. 449; *Dickeschied* v. *Bank,* 28 W. Va. 340. We see no possible theory upon which we can relieve these interpleader plaintiffs from the necessity of complying with this absolute requirement of the statute. We hold that the affidavit is insufficient.

It must also be noted that the only affidavit filed was that of J. M. Wolverton, one of the attorneys for Cooper and the surety company. Assuming that the attorney for a corporation defendant may, by showing his proper authority and knowledge, make such an affidavit, we are of opinion that he could not make such an affidavit on behalf of the individual defendant, C. J. Cooper. It would seem

that where two or more plaintiffs wish to file a bill of interpleader, each must purge himself of collusion by an individual affidavit. "Where there are several plaintiffs, they must all join in the affidavit, or the affidavit must show satisfactorily why the other plaintiffs do not join." 2 Daniell's Chancery Pleading and Practice, 6th Ed., p. 1546. See also, *Bliss* v. *French,* 117 Mich. 538, 76 N. W. 73.

It is also insisted that Cooper and the surety company, at the time the "affidavit of interpleader" was filed, did not stand in such a position that they could avail themselves of the statutory proceeding under which they have attempted to act. It is true that they had been defendants in the McCue action, but that action was ended by the judgment against them, and the plaintiff in that action was making no claim for the money owing on the judgment. The only claims, therefore, being made against the judgment debtors were by Breckenridge under his contract and attorney's lien; by Lambert, under the assignment from McCue; and by Craig, by virtue of his execution and order of suggestion. It is vigorously argued that as to these plaintiffs in error, Cooper and the surety company, were not "defendants in an action," as contemplated by the statute. This contention, however, leaves out of consideration the fact that Craig had made them suggestees in an order of suggestion issued in aid of his execution. Whether without the order of suggestion Cooper and the surety company could have maintaind this statutory interpleader proceeding, we need not decide, for we are clearly of opinion that they were "defendants in an action", within the meaning of the statute, at least from the time of the issuance of the order of suggestion. We hold, therefore, that Cooper and the surety company occupied a status from which they could proceed under Code, 56-10-1, by the filing of proper affidavits.

Assuming, therefore, that these judgment debtors may possibly elect to remedy the defects pointed out in the affidavit and to proceed further herein, we deem it proper to pass upon the basic controversy involved in the proceeding.

It is extremely doubtful whether, in this statutory proceeding by way of interpleader, as distinguished from a bill of interpleader in chancery, the court could set aside the assignment to Lambert as having been made with intent to hinder, delay and defraud McCue's creditors. Such relief is peculiarly within the domain of chancery. But an additional basis of the court's action in holding the assignment invalid was that a verdict, prior to judgment thereon, is incapable of assignment, where the cause of action itself was not assignable.

There is no disagreement here that the right of action for the torts sued on by McCue were at common law non-assignable. It is argued, however, that such verdicts can be, and frequently have been made, assignable by operation of statute. *Zogbaum* v. *Parker,* 55 N. Y. 120; *Bloomstock* v. *Duncan,* 2 McCord (S. C.) 318, 13 Am. Dec. 728; *Ladd and Bush* v. *Ferguson and McFadden,* 9 Ore. 180; *Kent* v. *Chapel,* 67 Minn. 420, 70 N. W. 2.

Our attention is called to the statement of Lynch, J., in *Woodford* v. *McDaniels,* 73 W. Va. 736, 81 S. E. 544, 545, 52 L. R. A. (N. S.) 1215, as follows: "What is, and what is not, a cause of action personal in nature is frequently determined by the question whether it is or is not assignable, assignability and survivability being convertible terms." Accordingly, counsel for Lambert cite Code, 56-8-1 and 2, to indicate that all verdicts are thereby made survivable, and being survivable, are assignable. Those sections read as follows:

> 1. "Where a party dies, or becomes convict of felony, or insane, or the powers of a party who is a personal representative, committee or guardian cease, if such fact occur after verdict, judgment may be entered as if it had not occurred."
> 2. "Where such fact occurs in any stage of a cause, whether it be in a court of original or appellate jurisdiction, if it occur as to any of several plaintiffs or defendants, the suit or action may proceed for or against the others, if the cause of a suit or action survive to or against them. If a plaintiff or defendant die pending any suit or action, whether the cause of action would survive

> at common law or not, the same may be revived
> and prosecuted to judgment or decree and execu-
> tion in the same manner as if it were for a cause
> of action arising out of contract."

On first perusal, these sections might appear to make all causes of action survivable, but they have not been so construed. They originated in the Virginia Code of 1849, Chapter 173, and frequent adjudications thereunder in this state and Virginia are to the effect that these statutes relate to procedure only, and were intended to preserve actions, not causes of action, and are only applicable where the cause of action itself could survive. In other words, they were intended to avoid the abatement of the action and the necessity for bringing a new suit, and for the purpose of modifying the common law relating to non-survivability of certain causes of action. Indeed, the precise question whether McCue's cause of action was survivable or not seems to have been foreclosed by *Woodford v. McDaniels, supra*. We there held that: "A cause of action for malicious prosecution does not, under the common law or by statute, survive against the personal representative, unless as a result thereof property is acquired by the wrongdoer which enures to his benefit or enhances the value of the estate in the hands of his personal representative." In the same case, it was also decided that the sections of the statute above quoted prescribe "only the mode of procedure for the revival of actions which, at common law or by virtue of other statutory provisions, survive to or against the personal representative. It does not create a new cause, or give a new right, of action which did not exist before." See also, *Cunningham v. Sayre*, 21 W. Va. 440; *Martin v. B. & O. Railroad Co.*, 151 U. S. 673, 14 S. Ct. 533, 38 L. Ed. 311. We are, therefore, of opinion that the common law still prevails, unmodified by statute in this state; that the cause of action sued on by McCue was not survivable and, therefore, not capable of assignment; and, specifically, that the verdict here involved could not, prior to judgment, be assigned.

We are further of opinion that McCue's claim for a statutory exemption of $200.00 from the $500.00 in the hands of the receiver was made in ample time, and is sufficient in form. The Constitution of this state, Section 48, Article VI, provides that "Any husband or parent, residing in this State, * * * may hold * * * personal property to the value of two hundred dollars, exempt from forced sale subject to such regulations as shall be prescribed by law." Code, 38-8-3, provides that "When a debtor claims personal property as exempt under the provisions of this article, he shall deliver to the officer holding the execution or other process, a list by separate items with the value of each item, according to the belief of the debtor, of all personal property and estate owned or claimed by him, * * *." It is urged that the copy of this list was not delivered by McCue to "the officer holding the execution or other process", as required by statute. The court held no process, the receiver held no such process, and the sheriff had long before returned the execution which he held. And it has been held that such an exemption list not delivered to the officer holding the process is a nullity. *State* v. *Staton*, 98 W. Va. 101, 126 S. E. 407; *Taylor* v. *Belville*, 70 W. Va. 484, 74 S. E. 517.

But are we to say that a judgment debtor is to be deprived of his right to exemption because the process creating a lien on his wages or other debts due him, is delivered to the sheriff and immediately returned by that officer without the debtor's knowledge? Will the right to exemption be lost by reason of the fact that there is no longer any officer "holding the execution or other process"? If so, in almost all attachment and garnishment proceedings, the creditor could readily collude with the sheriff or other officer to whom the writ is directed, by having an immediate return made. Can the right to exemption be defeated by the simple process of having the officer get rid of the process? We do not believe that result can be achieved. A copy of the exemption list was delivered to the sheriff, who had held the writ of *fieri facias*, and the order of suggestion; another was given to

the general receiver; and a third filed in court. What else could have been done? Nor does his delay in making his claim mitigate against him. No diligence on his part would have enabled him to file the exemption schedule before the officer made return of the writ. Further, he could not possibly have known that the judgment would be judicially held to be his until the court's decision on that question. We think this Court's pronouncement in a similar case is controlling. In *Hibner v. Belcher*, 115 W. Va. 387, 176 S. E. 422, 423, an order of suggestion on a judgment against E. W. Hibner was served upon Billups,, and Wellman, who were claimed to owe Hibner $150.00. Hibner's wife claimed that the $150.00 was due to her, not to her husband, and instituted a suit before a justice asserting that claim. A judgment in her favor was appealed to the circuit court where her claim was dismissed. At that stage, Hibner filed an exemption list with Billups and Wellman, the garnishees, and filed a petition with another copy in the court. His petition was disallowed, and this Court held that "the order of the court, purporting to deny Hibner that right, is void."

We are, therefore, of opinion to reverse the order of the trial court as it relates to the claims of both Lambert and McCue, but without prejudice to any party involved, and to remand the case for further proceedings, in accordance with this opinion.

*Reversed and remanded.*

LOVINS, JUDGE, dissenting:

I believe the interpleader proceeding should be dismissed for lack of jurisdiction, for reasons hereinafter set forth.

I cannot say that a suggestion and summons on a judgment is an action and that a suggestee is a defendant within the meaning of Code, 56-10-1. That statute provides a cumulative remedy, allowing interpleader in an action at law, and also prescribes the procedure for enforcement thereof. *Pardee & Curtin Lumber Co. v. Odell,*

78 W. Va. 159, 88 S. E. 419. As to construction of statutes of this kind, see: Lewis' Sutherland Statutory Construction, Section 572; Sedgwick on Statutory and Constitutional Law, Second Edition, page 343.

The remedy thus given is available to a defendant " * * * in an action * * * which he does not wish to defend * * *." Cooper and the National Surety Company do not come within the purview of that statutory remedy. It is true that they were defendants in the action brought by the Town of Summersville for the use of McCue, but that action was defended by them with an unfavorable result. It had ended, leaving nothing to be done except to pay the judgment or apply for a review to this Court, and they chose to pay which ended the action.

The suggestion and summons were made and issued September 3, 1940, in the action of Craig v. McCue, in which action judgment was rendered for Craig in the year 1934. After rendition of the judgment, there was no longer an action. Wait's Actions and Defenses, Vol. 1, page 10.

A suggestion and process issued thereon under Code, 38-5-10, is an ancillary statutory proceeding in aid of collection of judgments. *Emmons Hawkins Hardware Co.* v. *Sizemore,* 106 W. Va. 259, 145 S. E. 438. See also *Exchange Bank* v. *Beatty,* 107 W. Va. 129, 147 S. E. 475, and *Park* v. *McCauley,* 67 W. Va. 104, 67 S. E. 174, 28 L. R. A. (N. S.) 1036, 21 Ann. Cas. 199.

It requires a strained construction to say that a suggestion and process in aid of an execution constitute an action and that the suggestees are defendants therein who do not "wish to defend." I do not believe such construction is warranted by the phraseology of the statute, nor authorized by any approved rules of statutory construction.

Cooper and the National Surety Company were not defendants in an action by reason of the suggestion made and process served on them; therefore, an affidavit of interpleader could not be filed by them or their attorney under provisions of Code, 56-10-1, and the filing of such

affidavit in this case gave the court no jurisdiction of the interpleader proceeding. Hence, the holding stated in the third point of the syllabus, in my view, is erroneous.

The other points of decision in the majority opinion state correct principles of law, in my opinion, but I do not think these points arise since there was no jurisdiction in the trial court to hear the interpleader proceeding, and hence these points are not reached for decision. The proceeding based on the affidavit of interpleader filed by Cooper and the Surety Company should be dismissed.