CARGILL, INC.

v.

EASTERN GRAIN GROWERS

(No. 10688)

Submitted January 18, 1955.   Decided March 15, 1955.

LOVINS, PRESIDENT and GIVEN, JUDGE, dissenting.

*Clarence E. Martin, Jr., Martin & Seibert,* for plaintiff in error.

*Harry H. Byrer,* for defendant in error.

BROWNING, JUDGE:

This is primarily an interpleader proceeding under the provisions of Chapter 56, Article 10, Section 1 of the Code,

however, a brief summary of the events leading up to the interpleader may be necessary.

Cargill, Inc., brought an action of assumpsit against the Eastern Grain Growers, hereinafter called Eastern, in the Circuit Court for Washington County, Maryland, on December 31, 1949. The action was subsequently removed, on motion of defendant, to the Circuit Court for Allegheny County, Maryland, wherein a jury returned a verdict for Cargill, Inc., in the amount of $6,075.00, and judgment was entered thereon on December 22, 1951. Cargill, Inc., then brought an action of assumpsit, based on this judgment, in the Circuit Court of Berkeley County, West Virginia, in December, 1952. Eastern appeared, entered a plea of non assumpsit, and filed a bill of particulars, but offered no evidence, and judgment was entered in favor of Cargill, Inc., for the amount of the foreign judgment, plus costs, on April 6, 1953. Execution issued the same day, and an order of suggestion was served upon the Merchants and Farmers Bank of Martinsburg, West Virginia, where money of Eastern was on deposit.

On June 1, 1953, Eastern tendered the affidavit of its President, Amos E. Bowman, for the interpleading of Myron L. Bloom, trading and doing business as H. S. Poffenbarger & Son of Washington County, Maryland, and it stated *inter alia* that the deposits to the credit of Eastern in the Merchants and Farmers Bank represent the proceeds of sales of grain owned by Bloom, which grain was sold by Eastern as agent of Bloom, and that such deposits constituted "an agency or trustee account" for the benefit of Bloom. Cargill, Inc., moved to quash the affidavit on three main grounds: (1) That the suggestee alone is the only person who may file an affidavit of interpleader to determine ownership of the money; (2) that the facts set forth show collusion between Eastern and Bloom; and (3) that insufficient facts are alleged to justify the conclusion that any property of Eastern constituted trust property. The motion to quash was overruled, and an order entered directing Bloom to appear and maintain or relinquish his claim. Bloom filed his petition for

interpleader June 26, 1953, and Cargill, Inc., subsequently "demurred" to the affidavit of Bowman, assigning substantially the same grounds as used in its motion to quash, and moved to strike the petition of Bloom on the grounds: (1) The petition does not allege sufficient jurisdictional facts; (2) the petition on its face shows collusion between Bloom and Eastern; (3) insufficient facts are alleged to prove the account constituted trust funds; (4) no facts are set forth showing account to be anything but a general account of Eastern; and (5) the petition shows on its face that the account was not intended to be a trustee account. Eastern and Bloom thereupon "demurred" to the motion to strike Bloom's petition, and the court overruled the several demurrers and refused to strike the petition. Cargill, Inc., then suggested the nonresidence of Bloom, and moved for security for costs, which motion was overruled.

The evidence in the record is in narrative form, certified by the court, in lieu of a complete report as taken. Summarized briefly, Bloom testified: That he would put his wheat into the hands of Eastern for sale, Eastern would obtain a buyer, he would authorize sale, and Eastern would collect the proceeds and remit to him, less storage and service charges; that there was a balance due him of $8,291.12; that he was informed of the attachment on November 21, 1952, but that nothing was done to claim the funds as belonging to him, except to place the matter in the hands of an attorney; that he looked to Eastern for payment rather than to the buyer; that he was sometimes paid before Eastern collected; that Eastern never bought wheat from him; and that he had been paid nothing for any wheat sold since October 27, 1952, although it was elicited on cross-examination that he had received an aggregate of $4,033.96 after that date. Malcolm Yeakle, Secretary-Treasurer of Eastern, testified that all proceeds from the sale of wheat, including commissions, from every source were deposited in the account, plus money advanced by Bowman, and received from Bowman's farm; that it was a general account, used for all purposes; and that the Eastern account with Bloom was a running ac-

count. Mr. Bowman testified substantially to the same facts, and in addition stated that the Cargill judgment had not been paid because Eastern did not have the money; that he had placed the matter in the hands of attorneys and did not know why Eastern's ownership was not disclaimed until June, 1953; and that he had not been advised to open the bank account as a trust account. The bank record of deposits and withdrawals was then introduced in evidence.

The court found that the money in the account belonged to Bloom, and ordered the funds paid to him. Cargill, Inc., then moved to strike all proceedings with reference to the interpleader, and to award a new trial, which motions were overruled and final judgment was entered February 6, 1954.

Errors assigned in this Court are: (1) Refusal to quash the affidavit of Bowman; (2) refusal to strike the petition of Bloom; (3) refusal to require security for costs from Bloom; (4) finding that the funds in the Merchants and Farmers Bank belonged to Bloom; (5) refusing to permit certain evidence offered by Cargill, Inc.; (6) directing the funds on deposit be paid to Bloom; and (7) overruling the motion for a new trial.

In view of the holding of the Court upon the controlling question presented by this writ of error, that is, the action of the trial court in refusing to quash the affidavit of Bowman, President of Eastern, a detailed discussion of the other assignments will not be necessary.

While the remedy by interpleader existed at common law, it was not allowed in any personal action except detinue, and then only when it was founded upon a joint bailment, privity of contract or upon a finding. Interpleader, of course, is an ancient and well established equitable remedy which was in existence before the enactment of interpleader statutes. However, this proceeding is based upon the statute, and the right to institute it, and the jurisdiction of the court to entertain it, is governed by Code, 56-10-1, the pertinent part of which reads as follows: "A defendant in an action brought

against him for the recovery of money which he does not wish to defend, but which money is claimed by some third person, or for the recovery of the possession of personal property to which he makes no claim, but which is claimed by a third person, may file his affidavit stating the facts in relation thereto, and that he does not collude with such third person but is ready to pay the money claimed, or deliver the property, to the owner thereof, as the court may direct, and the court may thereupon make an order requiring such third person to appear and state the nature of his claim, and maintain or relinquish the same, and may in the meantime stay the proceedings in such action. ***" This section is taken from the Act of Parliament, 1 and 2 William IV, Ch. 58, (1830-1831), and was intended to confer upon courts of law many of the powers exercised by courts of equity by extending this remedy to many cases to which it was not formerly applicable. *Dickeschied* v. *Exchange Bank et al.*, 28 W. Va. 340. While the *Dickeschied* case is not directly in point, some observations made in the opinion are pertinent, inasmuch as it was the first case in this Court in which the statutory remedy of interpleader was thoroughly considered. The statute in effect at the time that case was decided was Section 1, Chapter 107, Code of 1868, which provided that "upon affidavit of a defendant in any action, that he claims no interest in the subject-matter of the suit, but that some third party has a claim thereto, and that he does not collude with such third party, but is ready to pay or dispose of the subject-matter of the action as the court may direct, the court may make an order***." In the opinion, the Court said: "The 'third party,' when he is called in under this statute must 'state the nature of his claim,' and maintain it, by sufficient proof, or relinquish it. It is easy to perceive that such 'third party' may be put to great disadvantage; he must state the exact nature of his claim; his adversary as well as the court, is fully informed of it, while he, as well as the court, must be content with the scanty knowledge of the character of the plaintiff's right, disclosed on the face of his declaration, and this is all the plaintiff is required to give.

or that the court can require. Upon this state of the pleadings and in the absence of all knowledge of the facts which may appear on the trial, the court must make up, and cause to be tried such issue as he may deem proper to determine the facts disputed between the plaintiff and the claimant. Whether the court in the form of the issue it has directed, or in designating who shall be considered plaintiff in the issue, has erred or not, can not in any degree depend upon the facts proved on the trial, for in regard to all of these, the court was of necessity uninformed.***" This language indicates that the Court contemplated the filing of the interpleader affidavit at a time when the only information available as to the plaintiff's case was that disclosed on the face of his declaration. The more positive language now contained in Code, 56-10-1, that: "A defendant in an action brought against him for the recovery of money which he does not *wish to defend* ***." (Italics supplied.), seems clearly to contemplate the same thing.

In the instant case, Eastern resisted the efforts of Cargill, Inc., to secure a judgment in the Circuit Court of Berkeley County upon the foreign judgment from the time it was instituted in December, 1952 until judgment was entered on April 6, 1953. Eastern successfully resisted the efforts of Cargill, Inc., to attach the funds on deposit in the Merchants and Farmers Bank of Martinsburg throughout this period. On March 10, 1953, Eastern filed its plea of non assumpsit, and its bill of particulars filed April 1, 1953, stated that: "there was no judgment recovered by the plaintiff against the defendant in the action described in the second count of the plaintiff's declaration, and that no suit in assumpsit such as that described in said second count was instituted in the Circuit Court of Washington County, Maryland."

In the affidavit for interpleader of May 29, 1953, filed by its President, Bowman, subsequent to the entry of judgment against it, it was stated: "*** that the said Eastern Growers does not wish to further defend the above styled action for a judgment against it."

Although Bloom was aware of the litigation between Cargill, Inc., and Eastern, and discussed with the cashier of the Merchants and Farmers Bank the refusal to honor Eastern's check in the sum of $2,929.17, payable to Bloom in November, 1952, he took no action to assert his ownership of the funds in that bank until after the affidavit of interpleader was filed by Bowman, except to "refer the matter to my attorney." Between March 28, 1953, when the attachment of Cargill, Inc., was quashed, and April 6, 1953, when judgment was taken, nor at any other time did Bloom make demand upon the bank for the sum represented by the check issued to him in November by Eastern. The trial court stated in its opinion that the account of Eastern was opened in Merchants and Farmers Bank at Martinsburg on February 5, 1952, "to escape the satisfaction of the said Maryland judgment." The court further stated that: "The account however remained a general account of the corporation." There was no denial at the trial by Eastern or Bloom that transactions between them had continued, and were continuing, but the court sustained an objection to an inquiry by counsel for Cargill, Inc., of Malcolm Yeakle, Secretary-Treasurer for Eastern, as to what bank Eastern was doing business with at the time of the hearing. The information contained in the petition of Bloom, filed pursuant to the affidavit of Bowman, and Bloom's testimony at the hearing, were based upon the records of Eastern, Bloom stating that he had kept no record of his dealings with the latter. The burden was upon Eastern to sustain by proof the allegation of its President, Bowman, in his affidavit that it did not collude with Bloom. However, as heretofore stated, we find it unnecessary to pass upon the trial court's ruling upon the issue of collusion.

This Court has not passed upon the precise question of whether a defendant after judgment, who is not a suggestee in an order of suggestion, may invoke the statutory interpleader procedure. However, in *The Town of Summersville ex rel. Arnold McCue v. C. J. Cooper et al.,* 124 W. Va. 417, 21 S. E. 2d 669, the question is raised, but not decided, and in the dissenting opinion a very affirmative

stand is taken upon that question. In that case, McCue, in an action of debt, secured a judgment against Cooper, a police officer of the Town of Summersville, and the National Surety Corporation, in the sum of $1,000.00. Judgment was entered September 5, 1940. On the same day the verdict was returned, September 2, one Craig sued out a writ of *fieri facias* on a judgment rendered in 1934 in his favor against McCue. This writ was delivered to the Sheriff of Nicholas County, and on the same day returned *nulla bona*. A copy of the execution was docketed in the office of the Clerk of the County Court of Nicholas County on the 6th day of September. On September 3, Craig caused a suggestion order to be issued on his judgment, making Cooper and the Surety Corporation suggestees. Also on September 3, McCue assigned to one Lambert all his "right, title and interest in and to all proceeds arising or which may arise, growing out of the pending suit" against Cooper and the National Surety Corporation. Whereupon, an "affidavit in the nature of an interpleader" was filed on behalf of Cooper and the Surety Corporation, tendering for payment to the general receiver of the court the amount of the judgment, with interest and costs, and praying that the conflicting claimants thereto be required to interplead and set up their claims. The Court said: "It is also insisted that Cooper and the surety company, at the time the 'affidavit of interpleader' was filed, did not stand in such a position that they could avail themselves of the statutory proceeding under which they have attempted to act. It is true that they had been defendants in the McCue action, but that action was ended by the judgment against them, and the plaintiff in that action was making no claim for the money owing on the judgment. The only claims, therefore, being made against the judgment debtors were by Breckenridge under his contract and attorney's lien; by Lambert under the assignment from McCue; and by Craig, by virtue of his execution and order of suggestion. It is vigorously argued that as to these plaintiffs in error, Cooper and the surety company, were not 'defendants in an action,' as contemplated by the statute. This contention, however, leaves out of

consideration the fact that Craig had made them suggestees in an order of suggestion issued in aid of his execution. Whether without the order of suggestion Cooper and the surety company could have maintained this statutory interpleader proceeding, we need not decide, for we are clearly of opinion that they were 'defendants in an action', within the meaning of the statute, at least from the time of the issuance of the order of suggestion. We hold, therefore, that Cooper and the surety company occupied a status from which they could proceed under Code, 56-10-1, by the filing of proper affidavits."

In a very forceful dissenting opinion, Judge Lovins said: "The remedy thus given is available to a defendant '*** in an action *** which he does not wish to defend ***.' Cooper and the National Surety Company do not come within the purview of that statutory remedy. It is true that they were defendants in the action brought by the Town of Summersville for the use of McCue, but that action was defended by them with an unfavorable result. It has ended, leaving nothing to be done except to pay the judgment or apply for a review to this Court, and they chose to pay which ended the action." He further stated:

> "*** After rendition of the judgment, there was no longer an action. ***
>
> "***
>
> "It requires a strained construction to say that a suggestion and process in aid of an execution constituted an action, and that the suggestees are defendants therein who do not 'wish to defend'."

In other words, applying his language to the instant proceeding, Judge Lovins would not only deny the interpleader remedy to Eastern, but would deny it as well to the Merchants and Farmers Bank of Martinsburg had they attempted after judgment to invoke the remedy.

While some courts have held that interpleader statutes are remedial and should be construed liberally, Section 572, Volume II, Second Edition, Lewis' Sutherland Statutory Construction states: "When a right is given by statute and a specific remedy provided, or a new power and also the means of executing it are therein granted,

the power can be executed and the right vindicated in no other way than that prescribed by the act.***"

In referring to statutes of interpleader, Section 4, C. J. S. 48, states in part as follows: "*** As a general rule, the statute is merely a substitute for the original bill in equity and is governed by the same doctrines and principles, and its function or purpose, like that of the original bill in equity, is to protect one against conflicting claims and to avoid a multiplicity of suits." Section 5 thereof states that: "*** The purpose of such a statute is to provide a short, simple and convenient method of accomplishing the purposes of a bill of interpleader in equity, namely, to avoid a multiplicity of suits and to afford protection against conflicting claims, and to enable a party who has been sued on a contract as to which he admits full liability as to the amount thereof to place in positions of adversaries the real parties at interest.***"

All of the cases and all of the texts state that a defendant who seeks to interplead, whether by bill in equity or by statutory interpleader, must be a mere stakeholder with certain exceptions provided in bills in the nature of interpleader where some affirmative relief is sought.

This Court holds that Eastern, at the time the affidavit was filed by its President, Bowman, was not "a defendant in an action" which it did "not wish to defend." It had defended over a period of several months until judgment had been rendered against it, execution issued and an order of suggestion in aid of it served upon the bank. No one had made Eastern a suggestee in an order of suggestion issued in aid of an execution. If there was a stakeholder it was the bank, not Eastern. The only remedy still available to Eastern was a possible review by this Court. The motion of Cargill, Inc., to quash the affidavit of Bowman should have been sustained.

The judgment of the Circuit Court of Berkeley County is reversed and the case is remanded to that court for the entry of an order consistent with the views expressed in this opinion.

*Reversed and remanded with directions.*

GIVEN, JUDGE, dissenting:

Cargill obtained a judgment against Eastern in the State of Maryland. It then instituted an action in the Circuit Court of Berkeley County, West Virginia, for recovery of a judgment in this State on the foreign judgment and, at the time of the institution of the action in the Circuit Court of Berkeley County, caused an attachment to be served against money held on deposit in the name of Eastern in the Merchants and Farmers Bank of Martinsburg. Eastern defended the action instituted in the Circuit Court of Berkeley County, West Virginia, on its merits. Judgment was entered in favor of Cargill on the foreign judgment by the Circuit Court of Berkeley County. Eastern was successful, however, in having the attachment adjudged invalid. On the day judgment in favor of Cargill was entered by the Circuit Court of Berkeley County, Cargill caused the issuance of a writ of *fieri facias* on the judgment and, by virtue of a garnishee summons issued in aid thereof, attached the money held in the Merchants and Farmers Bank. The garnishee attachment was served on the bank on the day it was issued. After the bank filed its answer, the president of Eastern filed an affidavit suggesting that the money was claimed by Bloom, and the court entered an order directing that "Bloom do appear before this Court on the 29th day of June, 1953, and state the nature of his claim, and maintain or relinquish it ***". After service of a copy of that order on Bloom, he did appear and filed a pleading designated "Petition of Interpleader", stating fully the nature of his claim. After hearing in full on the petition of Bloom, the Circuit Court of Berkeley County found and adjudged that the money attached by virtue of the garnishee attachment was the property of Bloom.

The only basis given by the Court for the reversal of the judgment rendered in favor of Bloom is that Eastern was not a party defendant who could file an affidavit suggesting ownership of the money by Bloom. That conclusion is founded on one fact only, that Eastern had defended on the merits the action on the foreign judgment.

The effect of the Court's holding is that every defendant, at the time he is summoned, must either elect whether he will defend on the merits of the case or whether he will forfeit his right to later suggest to the court by affidavit that property attached is, in fact, the property of another person, even though the property attached may have come into his possession subsequent to the final judgment, or even though it may be property of some third person who had no knowledge of the pendency of the action. I can see no reason why the statute should be given such narrow construction. The statute, I believe, simply precludes a defendant from filing an affidavit suggesting an interpleader as to a matter which already has been litigated by him or as to a matter in which he claims some interest. The pertinent words of the statute, Code, 56-10-1, "A defendant in an action brought against him for the recovery of money which he does not wish to defend", as applied in the instant case, simply mean that the defendant filing the affidavit, Eastern, could not claim ownership of the money and, at the same time, suggest by affidavit an interpleader. In the affidavit filed, Eastern disclaimed any interest in the money attached.

The manner in which the Court applies the statute in the instant case is, I think, clearly in conflict with the Court's opinion in *The Town of Summersville ex rel. McCue* v. *Cooper*, 124 W. Va. 417, 21 S. E. 2d 669, cited in the Court's opinion herein. In that case, as in the instant one, there was outstanding a writ of *fieri facias* and, also as in the instant case, a garnishee summons had issued subsequent to the final judgment. In the *Cooper* case it was vigorously argued that the judgment debtors "were not 'defendants in an action', as contemplated by the statute". The Court said: "This contention, however, leaves out of consideration the fact that Craig had made them suggestees in an order of suggestion issued in aid of his execution. Whether without the order of suggestion Cooper and the surety company could have maintained this statutory interpleader proceeding, we need not decide, for we are clearly of opinion that they were 'de-

fendants in an action', within the meaning of the statute, at least from the time of the issuance of the order of suggestion. We hold, therefore, that Cooper and the surety company occupied a status from which they could proceed under Code, 56-10-1, by the filing of proper affidavits." I can see no material difference in the pertinent facts of the instant case and those of the *Cooper* case. This view of the effect of the Court's holding in the *Cooper* case is strongly emphasized in the dissenting opinion filed therein. It is also significant that the defendants in the *Cooper* case vigorously defended on the merits, as did Eastern in the instant case.

Assuming, for the purpose of this dissent, that the affidavit of Eastern was invalid, I see no reason why the pleading of Bloom, though denominated "Petition of Interpleader" should not be treated as a petition to try title to property under Code, 38-7-31, which, in so far as pertinent, reads: "A defendant, any person entitled to file a petition under the provisions of section forty-one of this article * * * or any other person whose rights are affected by the attachment, shall have the right, either jointly or separately, to defend against any attachment, and to the benefit of all available defenses thereto * * *". In 38 C. J. S., Garnishment, Section 2, it is stated: "Garnishment is an anomalous proceeding affording an extraordinary and harsh remedy. It partakes of the nature of both a process and a suit. It is, in effect, a mode of attachment." In Code, 38-7, garnishment is treated as an attachment. It is, in fact, an attachment adopted as an aid in the enforcement of a writ of *fieri facias*. As before noted, the trial court, after a full hearing, found and held that the money attached was, in truth, the property of Bloom. This Court should not disturb that finding merely because a pleading was not properly named. To do so, I believe, denies Bloom the right accorded to him by Code, 38-7-31, and his right to the money which the trial court found belonged to him.

In the *Cooper* case, we find this language: "Assuming, therefore, that these judgment debtors may possibly elect to remedy the defects pointed out in the affidavit and to

proceed further herein, we deem it proper to pass upon the basic controversy involved in the proceeding." The Court therein remanded the case, "but without prejudice to any party involved * * * for further proceedings, in accordance with" the opinion. In that case, the Court recognized the right of the parties to further and properly develop the matter in controversy before the trial court. In the instant case, no such right is recognized. Keeping in mind that only the affidavit was held defective, and that the affidavit is not a pleading, I think the same procedure followed in that case should have been followed here, and the case remanded for further development, not with directions to enter a judgment in favor of Cargill. The fact should not be overlooked or disregarded that Bloom had nothing to do with the filing of the supposedly defective affidavit, yet was required by the order of the court to appear and to "maintain or relinquish" his claim. I assume no one would contend that if Bloom had refused to appear after having been served with a copy of the order requiring him to do so, that he would not have been forever barred of any right or claim to the money attached. Yet, when he does appear in answer to the court's order, he finds himself forever barred of his right by something which happened in the case before he became a party thereto, and, presumably, before he had any notice of the pendency of the action. I think he has been effectively denied his day in court.

Being of the views indicated, I respectfully dissent.

LOVINS, PRESIDENT, dissenting:

I respectfully dissent. I think the law in this jurisdiction relative to the controlling question in this case, is stated in the case of *Summersville* v. *Cooper,* 124 W. Va. 417, 21 S. E. 2d 669. Notwithstanding that the writer of this dissent did not agree with the Court's opinion in the *Summersville* case, I am bound by the decision in that case. I think that this law should govern until this Court should be of the opinion to follow the views expressed in the dissent and overrule the case of *Summersville* v. *Cooper, supra.* This, the Court has not done. I would follow the

decision of this Court in *Summersville* v. *Cooper, supra,* as written and not rely on the views expressed by me in the note of dissent.